*Sxn*



**RECEIVED**
Feb 26 2015

**FEB 26 2015**

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

Taki Peacock

_____

_____
(Enter above the full name
of the plaintiff or plaintiffs in
this action)

15c 1884
Judge Thomas M. Durkin
Magistrate Judge Young B. Kim
PC 5

Case No. _____
(To be supplied by the Clerk of this Court)

vs.

B. Rigsby

?. Obaisi

Aveen (Bobby) Nagpal

Shanelle ?

Michael Lemke

Michael Magana

(Enter above the full name of ALL
defendants in this action. Do not
use "et al.")

Jane Doe

? Torri

? Davis

Amy ?

Anna McBee

**CHECK ONE ONLY:**

✓ **COMPLAINT UNDER THE CIVIL RIGHTS ACT, TITLE 42 SECTION 1983**
**U.S. Code** (state, county, or municipal defendants)

_____ **COMPLAINT UNDER THE CONSTITUTION ("BIVENS" ACTION), TITLE**
**28 SECTION 1331 U.S. Code** (federal defendants)

_____ **OTHER** (cite statute, if known)

*BEFORE FILLING OUT THIS COMPLAINT, PLEASE REFER TO "INSTRUCTIONS FOR*
*FILING." FOLLOW THESE INSTRUCTIONS CAREFULLY.*

I.  **Plaintiff(s):**

    A.    Name: _Taki Peacock_

    B.    List all aliases: _Ø_

    C.    Prisoner identification number: _____

    D.    Place of present confinement: _Stateville Correctional Center_

    E.    Address: _Route 53, P.O. Box 112, Joliet, Ill. [60434-0112]_

(If there is more than one plaintiff, then each plaintiff must list his or her name, aliases, I.D. number, place of confinement, and current address according to the above format on a separate sheet of paper.)

II.  **Defendant(s):**

(In **A** below, place the full name of the first defendant in the first blank, his or her official position in the second blank, and his or her place of employment in the third blank. Space for two additional defendants is provided in **B** and **C**.)

    A.    Defendant: _B. Rigsby (Caucasion Male)_

           Title: _Correctional Officer / Grounds Crew Supervisor_ Safety & Sanitation

           Place of Employment: _Stateville Correctional Center_

    B.    Defendant: _? Obaisi_

           Title: _Physician / Medical Director_

           Place of Employment: _Stateville C.C. Health Care Unit_

    C.    Defendant: _Aveen (Bobby) Nagpal_

           Title: _Medical Technician or Nurse_

           Place of Employment: _Stateville C.C. Health Care Unit_

(If you have more than three defendants, then all additional defendants must be listed according to the above format on a separate sheet of paper.)

Revised 9/2007

D. Defendant: Shanelle ? (Fair Skin African American Female)
Title: Nurse (Medical Personnel)
Place of Employment: Stateville C.C. Health Care Unit

E. Defendant: Michael Lemke
Title: (Former) Stateville Chief Administrative Officer
Place of Employment: Illinois Department of Corrections

F. Defendant: Michael Magana
Title: (Former) Stateville Chief Administrative Officer
Place of Employment: Illinois Department of Corrections

G. Defendant: Jane Doe (of Caribbean or African Native descent)
Title: (Medical Personnel) Either Physician, Assistant, Nurse or Med. Tech.
Place of Employment: Stateville C.C. Health Care Unit

H. Defendant: ? Torri (Caucasian female)
Title: Major
Place of Employment: Stateville Correctional Center

I. Defendant: ? Davis
Title: Physician (Medical Personnel)
Place of Employment: Stateville C.C. Health Care Unit

J. Defendant: Amy ?
Title: (Medical Personnel) Nurse
Place of Employment: Stateville C.C. Health Care Unit

K. Defendant: Anna McBee
Title: Grievance Officer / Correctional Counselor II
Place of Employment: Stateville Correctional Center

III.    **List ALL lawsuits you (and your co-plaintiffs, if any) have filed in any state or federal court in the United States:**

    A.    Name of case and docket number: _____

                _____

    B.    Approximate date of filing lawsuit: _____

    C.    List all plaintiffs (if you had co-plaintiffs), including any aliases: _____

                _____

                _____

                _____

    D.    List all defendants: _____

                _____

                _____

                _____

    E.    Court in which the lawsuit was filed (if federal court, name the district; if state court, name the county): _____

    F.    Name of judge to whom case was assigned: _____

                _____

    G.    Basic claim made:_____

                _____

                _____

    H.    Disposition of this case (for example: Was the case dismissed? Was it appealed? Is it still pending?): _____

                _____

                _____

    I.    Approximate date of disposition: _____

**IF YOU HAVE FILED MORE THAN ONE LAWSUIT, THEN YOU MUST DESCRIBE THE ADDITIONAL LAWSUITS ON ANOTHER PIECE OF PAPER, USING THIS SAME FORMAT. REGARDLESS OF HOW MANY CASES YOU HAVE PREVIOUSLY FILED, YOU WILL NOT BE EXCUSED FROM FILLING OUT THIS SECTION COMPLETELY, AND FAILURE TO DO SO MAY RESULT IN DISMISSAL OF YOUR CASE. CO-PLAINTIFFS MUST ALSO LIST ALL CASES THEY HAVE FILED.**

Revised 9/2007

IV.   **Statement of Claim:**

State here as briefly as possible the facts of your case.  Describe how each defendant is involved, including names, dates, and places.  **Do not give any legal arguments or cite any cases or statutes.**  If you intend to allege a number of related claims, number and set forth each claim in a separate paragraph.  (Use as much space as you need.  Attach extra sheets if necessary.)

1. With the temporary assistance of a jailhouse lawyer this action is brought to redress defendants' various deprivations of Plaintiff's rights under the Constitution and laws of the United States.

2. This Court has authority pursuant to 42 U.S.C. 1983 to award appropriate actual, consequential, compensatory and punitive damages, and has authority under 42 U.S.C. 1988 to award attorneys' fees and costs to successful civil rights plaintiffs.

3. In addition, where a district Court has original jurisdiction over related state law claims pursuant to 28 U.S.C. 1367(a), as long as the State Claims "derive from a common nucleus of operative fact" with the original federal claims. A loose factual connection is generally sufficient.

4. This Court may also have jurisdiction of this action pursuant to 28 U.S.C. 1331 and 1343(a)(1)-(3) because the matters in controversy arise under the Constitution and laws of the United States.

4



5. Venue in this judicial district is proper under 28 U.S.C. 1391 (b)(1) and (2) because a substantial part of the events or omissions giving rise to plaintiff's claims occurred in judicial district.

6. Among other things, Defendant's were deliberatively indifferent to plaintiffs' safety due to hazardous work conditions without proper or no training, and to plaintiff's serious medical needs. As a result, plaintiff suffered the amputation of two toes, an infection some time there-after, and an up & down roller coaster ride endurance of pain.

7. This summary of journaled events is comprised of claims of deliberate indifference to hazardous work conditions, medical needs and against WEXFORD policies and practices.

8. November 2012, plaintiff Peacock became employed as a landscaper inside the grounds of the Stateville Correctional Center. Plaintiffs' supervisor was the Defendant / Correctional Officer B. Rigsby.

9. April 2013, plaintiff for the first time began his lawn care duties with the use of a push lawnmower.

10. Plaintiff did not receive training from defendant Rigsby.

11. After long days of having cut grass on the

institutions grounds, defendant Rigsby would tell plaintiff "think that's something, wait until you cut the "hill".

12. At some point plaintiff would be apart of mowing the infamous "hill". Each time plaintiff and others cut the "hill", it never failed, plaintiff or a co-worker would slip and fall while operating lawn mowers. While in defendant Rigsby's presence defendant Rigsby thought it to be funny, either laughing or cracking jokes. And yet continued to order that this dangerous hill be mowed with lawn mowers.

13. After plaintiff's first day of cutting the hill, he expressed to defendant Rigsby that mowing the hill side to side as co-worker Cornelius suggests makes him (plaintiff) fall, "how should we cut the hill"? was plaintiff's question.

14. Defendant Rigsby replied, "cut it whatever way you feel comfortable".

15. Prior to plaintiff's employment other inmate employees like David Smith,               , and               , have received little or no training and sought to be supplied with steel toe boots, proper gloves and other safety equipment/gear. (Exhibit -A is herein attached.)

16. Defendant Rigsby showed no concern as plaintiff never received any safety equipment outside of cotton gloves and goggles.

17. On July 4, 2013, at approximately 8:00 am, plaintiff and co-workers were called out and instructed to cut wet grass on the hill by defendant Rigsby.

18. Defendant Rigsby left plaintiff unsupervised to mow

another area with a tractor.

19. Plaintiff, remembering how cutting the hill side to side made him fall, along with the grass being wet from rain earlier that morning and late the night before, began to mow the hill in a up and down manner. While pulling the mower up plaintiff slipped on the wet grass, his left foot caught the blades under the mower severing two toes. Co-workers came to plaintiff's aid and alerted defendant Rigsby.

20. Defendant Rigsby arrived on the scene and called a Code 3. Pressure was applied to plaintiffs' foot, and toe pieces placed in a bag of ice.

21. The Shift Commander, Major Torri arrived a few minutes later and told co-workers to slide plaintiff down the hill and place him down on the grass in an open field.

22. A few minutes thereafter Nurse Shanelle & Med. Tech. Aveen (Bobby) Nagpal arrived on the scene with a wheel chair. Defendant Rigsby handed Nagpal the bag containing plaintiff's severed toes. Nagpal in turn sat the bag down in the grass to wrap plaintiff's foot.

23. Major Torri ordered co-workers to place plaintiff in the bed of a unsanitary pick up truck to be transported to the Health Care Unit.

24. Co-worker Parisi placed the bag of plaintiffs' toes in the truck with the approval from defendant Rigsby.

25. The truck pulled up to the orientation ramp where plaintiff was taken into the Health Care Unit by two nurses in a wheel chair.

26. While awaiting an ambulance plaintiff overheard chatter

amongst the medical personnel that revealed the bag with plaintiff's toes were lost.

27. Shanelle & Nagpal entered the Health Care Unit, Shanelle asked plaintiff who has the bag with the toes. Plaintiff replied, "they were given to you (Shanelle & Nagpal), to which Shanelle sternly denied.

28. The ambulance paramedics arrived and checked plaintiff's vitals, and had to wait until defendant Bigsby located and brought the bag of toes into the Health Care Unit before departing to St. Joseph's emergency room. Plaintiff asserts that it was more than an hour between the time of injury and time of departure.

29. Plaintiff arrived at St. Joseph's hospital at approximately 11:17 am. A nurse asked plaintiff for information to get a basic understanding of his condition.

30. A physician examined and acessed plaintiff's damaged/injured foot and explained surgery would be required.

31. A nurse took plaintiff's toes out of the bag and placed them into a tray and back onto ice, stating: "The toes have to be placed in a seperate bag or container and then placed on ice. Direct contact would and could damage the toes giving them frost bite making them un-useful and dead." This plaintiff believes medical personnel at the Stateville C.C., should have had the basic training and knowledge to know this. Medical personnel including but not limited to Shanelle and Nagpal.

32. A nurse placed plaintiff on an I.V.

33. A surgeon informed plaintiff that they would be trying to re-attach plaintiff's toes.

34. Some time later, the surgeon returned explaining that they would not be re-attaching plaintiff's toes. But, that his second toe would be reduced to a nub and the big toe surgically cleaned.

35. The surgeon informed plaintiff that a specialist had been contacted and would see grievant Friday July 5, 2013, or the upcoming Monday July 8, 2013.

36. A nurse gave plaintiff a urinal. Plaintiff's I.V. was finished and he was taken up stairs for surgery.

37. Plaintiff awoke after surgery and was tended to by nurses.

38. The surgeon informed plaintiff that everything was done according to how he had explained earlier.

39. The surgeon wrote out an order for Stateville's medical staff to follow, stating out loud, that plaintiff's dressing is to be changed three times a day wet to dry.

40. Right before the 8:00pm count check on this same day (July 4, 2013), plaintiff arrived back into Stateville C.C.

41. Plaintiff was taken to the Health Care Unit and admitted to the infirmary.

42. For plaintiff's four day stay in the infirmary, plaintiff was given an inconsistent amount of Motrin (pain killers) and Bactrin (antibiotics) contrary to the surgeon's order, that in turn put plaintiff on a roller coaster of pain endurance.

43. July 5, 2013, Jane Doe (Medical Personnel) of a foreign Caribbean or African native descent, stated that "it was not necessary to change plaintiff's dressing three times a day" and took it upon

herself to change the medical order to one dressing change per day. This would be the same medical personnel to first use vaseline on plaintiff's wound when dressing, whereas others would use ointment.

44. July 8, 2013, Defendant Obaisi unwrapped and examined plaintiff's wound. Once done, Obaisi left the dressing wrap loose, unstable and able to slide back & forth. The dressing was left in this manner while in a shower shoe on a nasty floor in the infirmary for over an hour.

45. Plaintiff asked Obaisi about his appointment to see the specialist and was told arrangments are being made.

46. July 9, 2013, both pain & antibiotic meds were not delivered. Plaintiff suffered in a great deal of pain.

47. July 10, 2013, plaintiff was told by both Obaisi & Dr. Davis that his open wound can be exposed for an unlimited length of time without risk of damage or danger.

48. While in the Health Care Unit former Grounds Crew Supervisor Correctional Officer Maui informed plaintiff that as supervisor he only allowed the use of mowers on the front & two sides of the hill, but not the back of the hill where plaintiff's injury occurred. The back is where he only allowed the use of weed wackers.

49. July 11, 2013, Obaisi explained to plaintiff how in the Civil War those who lost limbs wounds would be left open and skin would grow back.

50. Being that plaintiff was scheduled to see a specialist on July 8, 2013, plaintiff inquired to Obaisi about the appointment. Obaisi stated he was still trying to get it approved.

51. July 15, 2013, plaintiff was told by Obaisi that he was

approved to go out and see specialist.

52. July 16, 2013, a pungent odor arose from plaintiff's wound while getting a dressing change.

53. Obaisi and a Jane Doe African American nurse said the odor was normal and not alarming. Note: Plaintiff had been placing a strip of plastic from a plastic bag on top of his dressing wrap in order to protect his socks from leaking blood & pus, to which was observed and allowed by medical personnel each day plaintiff's dressing was changed.

54. July 17, 2013, nurse Jenny was changing plaintiff's dressing and expressed deep concern about the very strong odor coming from plaintiff's wound, and commented that plaintiff's wound may be infected. Nurse Jenny ordered a culture.

55. For the first time after surgery, Obaisi finally ordered wet to dry dressings after wound was soaked in Badadin. However, instead of three times a day as ordered by surgeon, dressing changes once a day continued.

56. July 18, 2013, plaintiff found the removal of the wet to dry dressing to be quite painful and asked to go back to dry only dressing changes.

57. Obaisi, frustrated with plaintiff, unprofessionally changed the order to dry only dressings.

58. Nurse Mary explained the reason for wet to dry dressing changes to plaintiff. Now having a understanding, plaintiff told nurse Mary & Obaisi that he would deal with the pain if that's what was needed for plaintiff's wound to be healthy.

59. Obaisi stubbornly stated that plaintiff asked for it,

therefore keep the order at dry only dressing change.

60. Plaintiff took a serious note on how his file chart is consistently misplaced. How he's seen by different nurses on different days who don't know what to do due to not being able to locate plaintiff's file.

61. Plaintiff also notes how over the days four or five nurses who've handled plaintiff's dressing changes would go from handling everything like keys, doors, drawers, etc., right to plaintiff's wound without changing gloves. All which may have been a contribution to the infectious smell to plaintiff's wound.

62. Obaisi told plaintiff that some lady was doing some type of research and setting up the appointment with a specialist.

63. July 19, 2013, plaintiff was seen by a mental health physician Williams.

64. Nurse Amy explained to plaintiff that it wasn't a good thing to cover up bandaged wound with a plastic bag because of the heat and moisture that causes a breeding ground for bacteria. Although nurse Amy and other medical personnel allowed such practice without objection until now, plaintiff discontinued this practice.

65. July 20, 2013, plaintiff begin to feel a strong sharp pain and some numbness to his toes and left leg.

66. July 21, 2013, plaintiff expressed to nurse Amy about the pain & numbness. No doctors were on staff! Though Amy could not give a diagnosis, she took it upon herself to treat plaintiff's wound by applying badadin and antibacteria ointment.

67. July 23, 2013, plaintiff was informed by Obaisi that the culture came back yesterday (July 22) positive for an infection.

Due to no doctor being on duty, Obaisi didn't find out until today.

68. A Jane Doe African American nurse informed plaintiff that she could see the infectious part being brown in color. Whereas Obaisi stated that it looked good and thinks the infection is gone, despite the brown discoloration.

69. Obaisi informs plaintiff that he and the lady who makes the arrangements are trying to figure out which specialist would see plaintiff.

70. Plaintiff wrote Dr. Arthur Funk the WEXFORD Regional Medical Director, Ms. Debbie Denning Chief of Programs & Services, and Warden O'Brien.

71. Plaintiff spoke with co-worker Parisi who informed plaintiff that Rigsby had the toes in the truck. Parisi had put them in the crate that was in the bed of the pick up truck, Rigsby forgot them!

72. July 23, 2013, plaintiff filed a grievance on the physical injury to his counselor Jill Hosselton. (Herein attached as Exhibit-B)

73. July 24, 2013, nurse Mary was able to have physician Davis reverse the order back to "wet to dry" dressing changes. Whereas, once a day dressing changes as opposed to three times a day continued.

74. July 25, 2013, plaintiff received counselor's 7-24-13 response to plaintiff's grievance with a general reply from Rigsby. (Herein attached as Exhibit-B)

75. Plaintiff attached a written response to Counselor's response rebutting Rigsby's reply, forwarding it with grievance to the Grievance Officer. (Herein attached as Exhibit-C)

76. Being that plaintiff was concerned about the infection to

his wound in connection with the unsanitary conditions and cost effective behavior of Stateville's medical staff, plaintiff wrote Mr. Louis Shicker and Warden O'Brien for help. (Herein attached as Exhibit-D₁E)

77. Plaintiff filed a continuance grievance to his physical injury on the medical treatment, filed as a emergency grievance to the Chief Administrative Officer. (Herein attached as Exhibit-F)

78. Nurse Mary informed plaintiff that he was approved to see a specialist.

79. Nurse Madonna informs plaintiff that no specialist wants to see plaintiff, and specialist has the right to deny seeing him. Plaintiff believe WEXFORD refused to pay the cost of seeing a specialist.

80. Nurse Madonna states that Obaisi would be contacting UIC to basically see if plaintiff could be cared for by them.

81. Physician Assistant Williams, along with other nurses, inform plaintiff that Bactrim is usually taken for 14 days. That plaintiff had been taking it for the past twenty days because a infection had set in. Plaintiff had also began taking Levofloxacin and was instructed by physician Davis via nurse Amy to take both.

82. July 29, 2013, plaintiff wrote a follow up letter for help to Warden O'Brien.

83. July 30, 2013, nurse Mary informed plaintiff he had been unapproved to see a specialist.

84. Plaintiff mailed a letter to attorney Michale Baniake seeking possible representation. (Herein attached as Exhibit-G)

85. August 1, 2013, plaintiff seeking assistance wrote a letter to the Chicago Alliance Against Racial & Political Repression. (Exhibit-H)

86. After Warden O'Brien hearing about plaintiff's infection

and scolding the Health Care Unit, on the 3pm to 11pm shift, plaintiff was called to the H.C.U for a dressing change and check for infection.

87. August 2, 2013, nurse Madonna changed and checked plaintiff's dressing and thought everything looked okay.

88. While nurse Madonna was on the phone with Warden O'Brien, O'Brien inquired about why plaintiff would not be seen by a specialist, nurse Madonna replied: "Because of the money".

89. Mr. Louis Shicker responded to plaintiff's letter. (Herein attached as Exhibit-I)

90. August 5, 2013, plaintiff was told by nurse Madonna that she (Madonna) heard plaintiff would be going out to U.I.C.

91. August 9, 2013, attorney James P. Chapman mailed plaintiff a letter informing him that he is not taking cases at this point in his career. (Herein attached as Exhibit-J)

92. Plaintiff wrote another letter to attorney Chapman to take him up on his offer to find an attorney for plaintiff. (Herein attached as Exhibit-K)

93. August 12, 2013, Chief Administrative Officer returned plaintiff's emergency grievance deeming it not an emergency. (Herein attached as Exhibit-F)

94. August 15, 2013, plaintiff went out to U.I.C. The Doctor explained to plaintiff not to expose his wound at night in the cell. Whereas nurses told plaintiff to leave it exposed so that the air could dry & harden it. Nurses also on lockdowns exposed plaintiff's wound when changing plaintiff's dressings in the cell.

95. The Doctor also stated that the wound was healing well and

that a skin graft is the last option.

96. August 16, 2013, Counselor Jill Hosselton responded to plaintiff's emergency grievance stating that the grievance was forwarded to the Grievance Officer. That plaintiff will receive a final response from the Grievance Officer when the Health Care Unit responds to same. (Herein attached as Exhibit-F)

97. Health Port Mailed plaintiff a copy of his medical records. Documents are hereby retained by plaintiff.

98. August 18, 2013, plaintiff was denied dressing change due to level one lockdown.

99. August 26, 2013, the Uptown People's Law Center mailed plaintiff correspondence requesting grievances, medical reports and related documents. (Herein attached as Exhibit-L)

100. August 27, 2013, plaintiff learned that Bigsby received a Correctional Officer of the month award for the great job he did in the handling of plaintiff's injury.

101. September 2, 2013, plaintiff seeking representation wrote a letter to Uptown People's Law Center. (Attached as Exhibit-M)

102. September 5, 2013, plaintiff was ordered to turn his crutch in.

103. September 20, 2013, plaintiff is told that his treatment is done. No follow up care from this day forward.

104. Uptown People's Law Center sent correspondence to plaintiff explaining the exhaustion process and informed plaintiff to forward them the Administrative Review Board's response once received. (Herein attached as Exhibit-N)

105. October 7, 2013, plaintiff wrote a letter to the People's Law Office seeking representation. (Herein attached as Exhibit-O)

106. October 18, 2013, plaintiff submitted a written inquiry to the Grievance Officer as to the status of both grievances #2260 & 2370/m721. (Herein attached as Exhibit-P)

107. October 27, 2013, plaintiff again submitted a written inquiry to the Grievance Officer as to the status of both grievances #2260 & 2370/m721. (Herein attached as Exhibit-Q)

108. November 3, 2013, for the third and final time, plaintiff submitted a written inquiry to the grievance officer as to the status of both grievances #2260 & 2370/m721, that was initially submitted July 23, 2013 & July 25, 2013. (Herein attached as Exhibit-R)

109. Plaintiff also submitted a written letter to John Howard Association asking for help and exposure on the grievance process. (Herein attached as Exhibit-S)

110. November 13, 2013, the People's Law Office wrote plaintiff informing him that they would not be able to represent him. (Herein attached as Exhibit-T)

111. November 20, 2013, the John Howard Association responded to plaintiff's letter. (Herein attached as Exhibit-U)

112. November 25, 2013, due to the Grievance Officer's refusal to answer plaintiff's 7-25-13 emergency grievance #2370/m721, plaintiff submitted grievances directly to the Administrative Review Board for review. (Herein attached as Exhibit's -V,B,C,F,P,Q&R)

113. February 2014, plaintiff received Grievance Officer Anna McBee response to plaintiff's grievance #2260, Grievance Officer's Report

dated 1-23-14 with Chief Administrative Officer Michael Magana's concurrence dated 2-7-14. (Herein attached as Exhibit-W.)

114. February 21, 2014, plaintiff timely submitted his #2260 grievance appeal to the Administrative Review Board. (Herein attached as Exhibit- X, W, B, & C)

115. May 27, 2014, plaintiff submitted a inquiry letter to the Administrative Review Board requesting the status review of both grievances #2260 & 2370. (Herein attached as Exhibit-Y)

116. August 19, 2014, Freedom of Information Officer Lisa Weitekamp mailed plaintiff copies of four seperate Incident Reports. (Herein attached as Exhibit's Z1, Z2, Z3 & Z4)

117. November 25, 2014, the Administrative Review Board denied both plaintiff's grievances, thereby the exhaustion of plaintiff's remedies. (Herein attached as Exhibit-Z5)

**V.     Relief:**

State briefly exactly what you want the court to do for you.  Make no legal arguments.  Cite no cases or statutes.

Plaintiff Peacock requests that the Court enter judgment in his favor and against Defendants and award him: (A) Compensatory damages in an amount determined at trial; (B) punitive damages; (C) reasonable attorneys' fees and cost of this action; and (D) such other and further relief as this Court deems appropriate and just.

**VI.     The plaintiff demands that the case be tried by a jury.** ☑ YES     ☐ NO

## CERTIFICATION

By signing this Complaint, I certify that the facts stated in this Complaint are true to the best of my knowledge, information and belief.  I understand that if this certification is not correct, I may be subject to sanctions by the Court.

Signed this ___19th___ day of _February_, 20_15_

_Taki Peacock_
(Signature of plaintiff or plaintiffs)

TAKI PEACOCK
(Print name)

K67561
(I.D. Number)

Route 53, P.O. Box 112
Joliet, Illinois [60434-0112]
(Address)

IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS            CHICAGO EASTERN DIVISION

| | | |
|---|---|---|
| TAKI PEACOCK,<br><br> Plaintiff,<br><br> v.<br><br>B. RIGSBY, et al.<br> Defendants. | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) | Case No.:_____<br><br><br> _____<br> Assigned Judge |

## NOTICE OF FILING

TO: Prisoner Correspondence, Clerk's Office, U.S. District Court, 219
South Dearborn Street, Chicago, Illinois 60604.

 **PLEASE TAKE NOTICE**, that on the _19th_ day of February 2015, I have
caused the attached **COMPLAINT** it's **EXHIBIT'S** and **MOTION AND AFFIDAVIT
TO PROCEED WITHOUT PREPAYING FEES OR COST** with a **CERTIFICATE AND SIX
MONTH LEDGER** attached, to be mailed to the clerk's Office above for
filing and proper processing.

 _Taki Peacock_
 **TAKI PEACOCK**

## CERTIFICATE OF SERVICE

 I, Taki Peacock, hereby certify that a true and correct, one (1)
original and twelve (12) copies of the attached legal documents have
been served on the above named Clerk's office, with eleven of those
copies on behalf of the eleven defendants named in this cause. The same
being sent **via** the United States mail, with proper postage having been
paid at the Stateville Correctional Center on the _19th_ day of February,
2015.

 _Taki Peacock_
 **TAKI PEACOCK, K67561**
 **STATEVILLE CORRECTIONAL CENTER**
 **P.O. BOX 112**
 **JOLIET, ILLINOIS 60434-0112**

Subscribed and sworn to before me
this _19th_ day of February, 2015.

 _Jill E Hosselton_
 NOTARY PUBLIC

OFFICIAL SEAL
JILL E HOSSELTON
NOTARY PUBLIC, STATE OF ILLINOIS
KANKAKEE COUNTY
MY COMMISSION EXPIRES: 5/31/2017

EXHIBITS —

STATE OF ILLINOIS )
                 ) SS
COUNTY OF WILL )



# DECLARATION

I, DAVID A. SMITH, BEING COMPETENT TO MAKE THIS DECLARATION AND HAVING PERSONAL KNOWLEDGE OF THE MATTERS STATED THEREIN, DECLARES PURSUANT TO 28 U.S.C. § 1746 :

1.) IN MARCH OF 2011 I WAS ASSIGNED TO THE INSIDE GROUNDS CREW CHARGED WITH THE UPKEEP, CLEANLINESS AND BEAUTIFICATION OF THE GROUNDS INSIDE THE WALL.

2.) I WORKED THIS ASSIGNMENT UNTIL AUGUST 29, 2012

3.) UPON REPORTING TO MY ASSIGNMENT I RECEIVED NO TRAINING OR INSTRUCTION REGARDING THE USE, OPERATION OR SAFETY OF THE TOOLS AND EQUIPMENT TO BE USED.

4.) UPON REPORTING TO MY ASSIGNMENT I WAS SIMPLY INSTRUCTED TO CHOOSE A MOWER, THEN TAKEN TO A PLACE ON THE GROUNDS AND INSTRUCTED BY THE SUPERVISOR TO FIND A PLACE AND MOW.

5.) THE ASSIGNMENT REQUIRED ME TO PERFORM MANY TASKS WHICH POSED DANGERS TO MY HEALTH AND SAFETY, SUCH AS LOADING AND UNLOADING TRUCKS OF METAL BUNK BEDS, TRASH PICK UP AND REMOVAL IN THE FORM OF METAL SIDING, BOARDS WITH METAL SCREWS/NAILS, BROKEN GLASS BLOCK WINDOWS, ETC...

6.) THE OVERALL GROUNDS FOR MOWING CONSISTED OF UNEVEN GROUND.

RIDDLED WITH NUMEROUS HOLES CAUSED BY THE GROUNDHOG INFESTATION.

7.) WHEN IT CAME TO MOWING THERE IS A PARTICULAR PLACE KNOWN BY THE CREW AS "THE HILL" WHICH POSED SIGNIFICANTLY GREATER DAN- GER THAN ELSEWHERE.

8.) THE HILL WAS EXTREMELY DIFFICULT TO MOW ON THE FRONT AND SIDES BECAUSE OF THE DEGREE OF ANGLE WAS STEEP AND THE DIFFICULTY WAS COMPOUNDED BY THE MANY GROUNDHOG AND FOX HOLES.

9.) THE BACK OF THE HILL WAS IMPOSSIBLE TO MOW BECAUSE IT WAS EXTREMELY STEEP, A TASK I FOUND OUT THE HARD WAY.

10.) ON THE DAY WE WERE INSTRUCTED BY THE SUPERVISOR TO MOW THE HILL, ON MY THIRD DAY OF ASSIGNMENT, I WENT TO THE TOP AND ATTEMPTED TO MOW THE BACK OF THE HILL BUT FELL MANY TIMES.

11.) IT WASN'T UNTIL ANOTHER INMATE WORKER SAW ME FALLING THAT I WAS TOLD TO LEAVE THE BACK TO THE WEED- WHACKERS.

12.) BEFORE REPORTING TO ANY ASSIGNED AREA TO MOW I WAS INSTRUCTED OR WARNED OF THE DANGERS EACH AREA POSED.

13.) I NEVER RECEIVED ANY TRAINING, INSTRUCTIONS OR WARNING OF HOW TO OPERATE THE MOWER, WHAT NOT TO MOW OR THE MANY HAZARDS EACH AREA POSED SUCH AS HOLES, PIPES STICKING ABOVE THE GROUND...

14.) AS A RESULT OF THE DELIBERATE INDIFFERENCE TO MY

HEALTH AND SAFETY I SUFFERED A SERIOUS PHYSICAL INJURY IN THAT THE NERVES AND TENDON IN MY LEFT THUMB WERE SEVERED.

PURSUANT TO 28 U.S.C. §1746, I DECLARE UNDER PENALTY OF PERJURY THAT THE FOREGOING IS TRUE AND CORRECT TO THE BEST OF MY KNOWLEDGE. EXECUTED ON JANUARY 29, 2015.

DAVID A. SMITH  N-90738

*Page 1 of 5*

**ILLINOIS DEPARTMENT OF CORRECTIONS**

## OFFENDER'S GRIEVANCE

*Exhibit - B*

*#2260*

| | | |
|---|---|---|
| Date: 23 July 2013 | Offender: (Please Print) TAKI PEACOCK | ID#: K67561 |
| Present Facility: Stateville C.C. | Facility where grievance issue occurred: Stateville C.C. | |

**NATURE OF GRIEVANCE:**

- ☐ Personal Property
- ☐ Mail Handling
- ☐ Restoration of Good Time
- ☐ ADA Disability Accommodation
- ☒ Staff Conduct
- ☐ Dietary
- ☐ Medical Treatment
- ☐ HIPAA
- ☐ Transfer Denial by Facility
- ☐ Transfer Denial by Transfer Coordinator
- ☒ Other (specify) *Physical Injury*

☐ Disciplinary Report: ___/___/___ Date of Report _____ Facility where issued

**Note:** Protective Custody Denials may be grieved immediately via the local administration on the protective custody status notification.

**Complete:** Attach a copy of any pertinent document (such as a Disciplinary Report, Shakedown Record, etc.) and send to:

**Counselor**, unless the issue involves discipline, is deemed an emergency, or is subject to direct review by the Administrative Review Board.
**Grievance Officer**, only if the issue involves discipline at the present facility or issue not resolved by Counselor.
**Chief Administrative Officer**, only if EMERGENCY grievance.
**Administrative Review Board**, only if the issue involves transfer denial by the Transfer Coordinator, protective custody, involuntary administration of psychotropic drugs, issues from another facility except personal property issues, or issues not resolved by the Chief Administrative Officer.

**Summary of Grievance** (Provide information including a description of what happened, when and where it happened, and the name or identifying information for each person involved):

Now comes grievant, Taki Peacock, in accordance with 504.810, grieving that prison officials longstanding deliberate indifference to the substantial risk of serious harm in regards to his unsafe hazardous work assignment conditions, has resulted in the suffering from the loss of his limbs, a serious psychological and irreparable physical injury to which, grievant seeks to recover money damages. Let the record reflect, grievant has no knowledge of the law federal, state or administrative and is therefore being temporarily assisted by fellow inmates, yet all of the facts contained herein remains to be true. (Note this grievance is "5" pages total) ⟶

**Relief Requested:** To be compensated for the preventable pain, psychological and serious, permanent physical injury caused while on the job, and for any discovered deliberate indifference thereto caused by medical personnel.

☐ Check only if this is an EMERGENCY grievance due to a substantial risk of imminent personal injury or other serious or irreparable harm to self.

| Taki Peacock | K67561 | 07/23/13 |
|---|---|---|
| Offender's Signature | ID# | Date |

**(Continue on reverse side if necessary)**

---

### Counselor's Response (If applicable)

Date Received: 7/23/13

☐ Send directly to Grievance Officer   ☐ Outside jurisdiction of this facility. Send to Administrative Review Board, P.O. Box 19277, Springfield, IL 62794-9277

Response: Per C/Rigsby inside grounds workers are instructed in safety with the mowers when they start. It is normal procedure for inside grounds workers to have to mow hills. Inside grounds workers are instructed to only mow downhill. On the day (7/4/13) of the accident the grass was not wet. The tags were not misplaced out in the sun, they were in the back of the Inside Grounds Truck. 434's report written.

| J. Hassitt | J. _____ | 7/24/13 |
|---|---|---|
| Print Counselor's Name | Counselor's Signature | Date of Response |

---

### EMERGENCY REVIEW

Date Received: ___/___/___

Is this determined to be of an emergency nature?

☐ Yes; expedite emergency grievance
☐ No; an emergency is not substantiated. Offender should submit this grievance in the normal manner.

Chief Administrative Officer's Signature _____ Date ___/___/___

In November of 2012, grievant gained employment with Stateville's Safety and Sanitation department, specifically known as the "Inside Grounds" crew, under Supervisor/Correctional officer "Rigsby". The duties of an Inside Grounds crewman fluctuates with the seasonal weather, duties that include but are not limited to snow removal and lawn care.

In April of 2013, the lawn care duties began for grievant. With little to no training grievant and his co-workers would be ordered several times over to mow a dangerous area known as "The Hill". It never failed, grievant and other co-workers would always slip and fall while operating lawn mowers on this Hill. Supervisor Rigsby each time thought it to be funny, laughing and cracking jokes when they fall. In fact when grievant began the lawn care detail, and after long days of having cut grass in other parts of the institution, Rigsby would express things like "think thats something, wait till you cut the Hill".

After grievants first day of having cut the Hill, because of much difficulty to do so, co-worker (Cornelius) tells grievant to cut it side to side. Grievant expressed to Rigsby that side to side makes them fall, to which he himself simply asked Rigsby "how should we cut the Hill?" Rigsby replied, "cut it whatever way you feel comfortable".

On July 4, 2013, grievant and co-workers were instructed to cut the Hill. Grievant was standing at the top of the Hill cutting the steepest area, which is the back side. While pulling the mower up he slipped on the wet grass, his left foot went under the bottom of the mower severing half of the second toe to the knuckle, and the entire toe nail area and tip of the big toe. In pain, and in the vicinity of his co-workers, grievant saw that his foot was cut up, and as he yelled "ah...their gone", his co-workers quickly came to his aid. Co-worker (Don) wrapped a towel around the wound and elevated his foot, Co-workers (Cornelius and Dennis) ran to alert Supervisor Rigsby. Rigsby then radioed a code 3.

Grievant believes Rigsby prepared a bag of ice while one or two of his co-workers placed his severed toes therein. A few minutes later Major Torrii arrived instructing grievants co-workers (Trent, Reese and Don) to get him down the Hill onto the open field. Minutes after that, nurse(s)/medical technician(s) "Shanelle" and "Bobby" arrived with a wheel chair. It is grievant's belief that Rigsby gave Bobby the bag of ice containing his toes, to which Bobby sat the bag down to wrap his foot. Major Torrii instructed Rigsby to drive grievant to the Health Care Unit in the pick up truck and for Shanelle and Bobby to go ahead. Co-workers (Trent and Harold) got grievant into the bed of the truck, and was driven to the orientation ramp where he was helped to a awaiting wheelchair with two nurses and wheeled into the Health Care Unit.

Grievant was wheeled into the Health Care Unit at approxiamately 9:30 a.m., there wasn't a doctor present on that day and time. About twenty to thirty minutes before the paramedics arrived, there began chatter amongst the medical personnel

Next page ⟶

and correctional officers to the effect that no one had a clue as to where his toes were. Shanelle and Bobby thereafter arrived into the E.R. with Shanelle asking grievant who has his toes? Grievant stated that they were given to them (Shanelle and Bobby), to which they both denied. Nevertheless, grievant clearly recalls his toes being handed to Bobby.

The paramedics arrived and after checking grievants vitals were ready to transport, but were unable to do so as the search for his toes was ongoing. The continued chatter revealed that officials were searching everywhere, even in the trash can. The bag with grievants toes was at some point found on the scene of the accident. The time frame from which grievant was taken from the scene and when the toes were given to the paramedics for transport was approximately a hour. Grievants toes was left on the scene in a bag of ice in the sun for nearly an hour.

Grievant arrived at St. Josephs hospital at approximately 10:45 a.m. and placed in a room on the first floor. A caucasian Jane Doe nurse walked in and asked for enough information to get a basic understanding of grievants condition. A Caucasian Jane Doe physician came in, examined and accessed the damage to grievants foot, and explained to him that he would require surgery to which one would be to see him shortly. Another caucasian Jane Doe nurse came in and placed grievants toes in a tray of ice stating:" the toes has to be placed in a seperate bag or container and then placed on ice. Direct contact would and could damage the toes giving them frost bite making them unuseful and dead". At this time the first Caucasian Jane Doe nurse came back in and placed grievant on a I.V.

A Caucasian John Doe surgeon came in about ten minutes later and informed grievant that they will be trying to re-attach his toes and he left out. About thirty minutes thereafter this same surgeon returned explaining that they would not be reattaching his toes, that grievants second toe would be reduced to a nub and the big toe surgically cleaned. The surgeon also informed grievant that a specialist had been contacted and would see grievant Friday July 5th or the upcoming Monday July 8th. The surgeon left out and a third Jane Doe nurse came in and gave grievant a urinal. At about 12:45 or 1:00 p.m. grievant's I.V. was finished and he was taken up stairs for surgery.

Grievant awoke from surgery and was moved to a private room and tended to by what he believes is about two or three nurses. The Surgeon then came in and informed grievant that everything was done according to how he had explained earlier. At that time, the surgeon then wrote out an order for Stateville to follow, stating out loud that grievants dressing is to be changed three times a day wet to dry.

On this same date July 4, 2013, grievant arrived back in Stateville right before the 8:00 p.m. count check. He was taken to the Health Care

Next Page ⟶

Distribution: Master File; Offender

DOC 0046 (8/2012)

Unit where officials took some time to rest on the decision that he would be admitted to the infirmary and not back to his cell. For grievants four day stay in the infirmary he was given an inconsistent amount of Motrin (Pain killers) and Bactrim (Anti Biotics).

Grievant on one of the days he was getting his dressings changed, had the opportunity to speak with former Inside Grounds crew Supervisor Correctional Officer "Mau". Mau stated to grievant that he would not allow the use of lawn mowers to cut the Hill as he was aware of the dangers, and thus elected that it only be cut with weed whackers.

Grievant has observed how Rigsby is a stickler for getting alot done in a small amount of time, and believes this to be the reason he deliberately disregard and turn a blind eye to the serious health risks by authorizing and condoning the use of lawn mowers on the Hill.

Lawn Mowers are dangerous machinery to be operating, especially on the Hill. With grievant and co-workers attesting to supervisor Rigsby taking their falls on the Hill as a laughing matter, further shows that Rigsby not only was aware of the dangers to grievants safety but yet was indifferent to those dangers. Rigsby had/has prior knowledge of previous injuries that occurred under his supervision, like that of David A. Smith (Nov. 21, 2012 Grievance #4064), a former crew member who nearly severed his thumb. Grievant himself has had to receive four stitches to his left leg while on the job. Grievant has surely proved officials deliberate indifference as oppose to mere negligence.

Grievants injury was no freak accident, it could have been prevented, for he was completely sober, undistracted and performing his duty in obedience to his supervisor Rigsby. Instead of attempting to provide steel toe boots and proper training after witnessing his workers fall on the Hill, Rigsby laughs and joke about it.

Both Stateville and I.D.O.C's administrations have been thoroughly made aware of Stateville's longstanding unsafe hazardous work assignment conditions, through numerous grievances filed by inmates, lawsuits and the John Howard Association. Those in authority, including but not limited to Supervisor Rigsby, have acted with deliberate indifference towards the risks to grievant and others by failing to take reasonable but substantial measures to abate it. Measures like providing proper training and equipment like steel toe boots, etc. It appears that supervisor Rigsby himself is without adequate training. All of the circumstantial evidence herein provided proves Supervisor Rigsby, certain Stateville officials and I.D.O.C. ARB members are all deliberately indifferent to grievants resulted suffering of physical pain, psychological and Permanent Physical injury, coupled with any further woeful deliberate indifferent acts inflicted by said prison and medical staff individually or jointly, grievant seeks to recover both compensatory and

next page ⟶

Punitive damages therefrom.

NOTE: Grievant has been continuing to remember subtle facts up until the filing of this grievance, therefore he reserves the right to add to this initial grievance anything he may come to recall thereafter that he deems is of importance.

RE: TAKI PEACOCK #K67561
23 July 2013 Grievance



EXHIBIT-C

## Grievant's Response To Counselor's Response

Date
Received: 7/25/13

Response: This response is in regards to grievants grievance
dated 7/23/13 to which counselor responded on 7/24/13.
Grievant request's that the grievance office conduct an
investigation to reveal the invalid statements of C/o Rigsby
via Counselor's response. (1) Per C/o Rigsby inside grounds workers
are instructed in safety with the mowers when they start.
Totally not true for grievant Taki Peacock; C/o Rigsby instructed
grievant's co-workers "Cornelius" & "Charlie" to train him,
neither has instructed grievant to only mow downhill. (2) C/o Rigsby
futher states, "its normal procedure for inside grounds workers
to have to mow hills" Grievant can't seem to find the truth in
this, as previous supervisor's "Maui", "Morgan", "Beard", and
"West" instructed the use of weed whackers when cutting the "Hill",
not lawn mowers. (3) C/o Rigsby also states that "on the day (7/4/13) of
the accident the grass was not wet." All of grievants co-workers that
day can attest that the grass was in fact wet, meteorologist reports
of the night before will also support grievant's truthifullness. (4) Finally,
C/o Rigsby states, " the toes were not misplaced out in the sun, they
were in the back of the Inside Grounds Truck." Rigsby admits they
were in the back of the truck, and last I checked trucks are outdoors.
The fact remains that the toes were lost, for the ambulance had to
wait till they were located before transporting grievant to the hospital.
(page 1 of 2)

Grievant understands that it is the code of the Grievance officer's procedures "not to set out their officers" in reports. Nevertheless, grievant pleads with the Grievance Office to be fair and impartial by seriously investigating the aforementioned.

TAKi PEAcock
PRint Grievant's NAME

Tahi Plocok
Grievant's Signature

7/26/13
Date of Response

(page 2 of 2)

EXHIBIT 1

7-25-13

Mr. Louis SHICKER

I AM writing you BECAUSE on July 4, 2013 I suffered an injury in which two of my toes were severed by a lawnmower. I was taken to St. Joe's Hospital & received surgery. The surgeon left my big toe open with an exposed bone & expose tissue because he isn't a specialist. He informed me that he had contacted a specialist & that I would be seen within four days either on the 5th or 8th. It is now the 25th & I'm sitting here still with an exposed wound that's now become infected. I believe this is due to these unsanitary conditions & even more so the length of time that they've left me with an exposed wound. I've been given the run around, they've been telling me that no specialist wants to see me & that they have a right to refuse. I know that Wexford's contract states that it's their responsibility to treat me even if it cost them out of pocket. I need your help to enforce them to get me the necessary treat-ment that my injury requires. If it's left up to Statesville's health care I will eventually catch gain green & die. So please help me

Sincerely Tah'i Peacock.

I ALSO WROTE
HER ON 7-23-13

EXHiBiT -E

7-25-2013

WARDEN O'BRIEN

I AM WRITING THiS LETTER iN RESPONSE
to the iNFORMATiON THAT I RECEiVED today. First
I WANT to THANK you FOR Fighting FOR ME. I WAS
told THAT "NO SPECiALiST WANTS to SEE ME & THAT
THEY HAVE THE Right to REFUSE ME." AlSO THAT DR.
OBAiSi WiLL BE CALLiNG U.i.C. to SLiDE ME iN." WELL I'VE
BEEN iNFORMED THAT WEXFORD'S CONTRACT STATES THEY
MUST TREAT ME & iF PATiENT REQUiRES A SPECiALiST,
THEY MUST SEND ME OUT EVEN iF THEY HAVE to
COME OUT OF POCKET. I'M NOT TRYiNG to BE difficult
OR UNREASONABLE, I'M JUST TRYiNG to GET MY
WOUND CLOSED & AVOid ANY FURTHER dAMAGE. I'M NOT
SAYiNG THAT I WAS told THAT I WOULDN'T BE SEEN,
THOUGH I AM SAYiNG THAT I WASN'T LEFT WiTH
THE CONFiDENCE THAT I WOULD BE SEEN SOON. I JUST
BELiEVE THAT THEY DON'T WANT YOU KiCKiNG ANY
MORE DOORS iN. THiS PRiSON iS UNSANiTARY & MY
OPEN WOUND iS BEiNG EXPOSE to THESE CONDiTiON
CONTiNUES to PUT ME AT FURTHER RiSK OF iNFECTiON.
THE THiNG THAT MAKES BELiEVE ME BELiEVE THAT
THEiR TRYiNG to AVOid YOU iS BECAUSE I WAS
ASKED to "iNFORM YOU THAT I'M O.K. & EVERYTHiNG
iS FiNE NOW." WELL I WAS FiNE BECAUSE I THOUGHT
THAT I didN'T HAVE A OPTiON, but WEXFORD'S CONTRACT
STATES it's THEiR DUTY to CARE FOR MY CONDiTiON.
SO THiS iS to ASK YOU to PLEASE KEEP THE PRESSURE
ON THEM, PLEASE UNTiL I'M TREATED. I'VE BEEN
told THE SAME THiNG PRETTY MUCH FOR THE LAST
THREE WEEKS. SO NO I'M NOT SATiFiED WiTH WHAT
I WAS told TODAY! (7-29-13    I AM WRiTiNG YOU to
GiVE YOU AN UPDATE ON MY UNCHANGED SiTUATiON.)

I AM truly no trying to BE A pAin in your
side but I desperately need your help in order
For me to get the necessary treatment For my
injury. It hAs officially been twenty-Five days,
twenty-six upon your reception of this letter,
that I've been left with An open wound.
PLEASE wArden O'Brien help me get out to the
specialist because I believe if it's left up to
Dr. ObAisi I'll be left this wAy. Dr. ObAisi told
me About soliders in the civil wAR losing their
limbs & it being left like thAt & their skin
growing over the wound. This is the mind thAt
I'm deAling wÍth, A Dr. thAt likes
to tell jokes during A serious situAtion. AgAin
I thAnk you For your time & your concern,
sincerely yours!

        JAki PEAcock #K67561
          C/1057

ILLINOIS DEPARTMENT OF CORRECTIONS

C-1057

**OFFENDER'S GRIEVANCE**

| Date: 07/25/13 | Offender: (Please Print) TAKI PEACOCK | ID#: K67561 |
|---|---|---|
| Present Facility: Stateville C.C. | Facility where grievance issue occurred: Stateville C.C. | |

GRIEVANCE OFFICE

AUG 8 2013

STATE A 310

**NATURE OF GRIEVANCE:**

- ☐ Personal Property
- ☐ Staff Conduct
- ☐ Transfer Denial by Facility
- ☐ Disciplinary Report: ___/___/___
  Date of Report
- ☐ Mail Handling
- ☐ Dietary
- ☐ Transfer Denial by Transfer Coordinator
- ☐ Restoration of Good Time
- ☒ Medical Treatment
- ☐ ADA Disability Accommodation
- ☐ HIPAA
- ☒ Other (specify) Physical Injury

Facility where issued

**Note:** Protective Custody Denials may be grieved immediately via the local administration on the protective custody status notification.

**Complete:** Attach a copy of any pertinent document (such as a Disciplinary Report, Shakedown Record, etc.) and send to:

**Counselor,** unless the issue involves discipline, is deemed an emergency, or is subject to direct review by the Administrative Review Board.
**Grievance Officer,** only if the issue involves discipline at the present facility or issue not resolved by Counselor.
**Chief Administrative Officer,** only if EMERGENCY grievance.
**Administrative Review Board,** only if the issue involves transfer denial by the Transfer Coordinator, protective custody, involuntary administration of psychotropic drugs, issues from another facility except personal property issues, or issues not resolved by the Chief Administrative Officer.

**Summary of Grievance** (Provide information including a description of what happened, when and where it happened, and the name or identifying information for each person involved):

Now Comes Grievant, Taki Peacock, grieving in accordance to 504.840 and 504.810. Let the record reflect, this grievance though emergency in nature, is strictly in grieving against the medical staff, and also considered as a continuation to grievants physical injury grievance filed by him on July 23, 2013.

Grievant presents the grossly incompetent and inadequate medical care he has received here at stateville, in it's totality, which has caused an infection to set up in the open wound to his foot that requires surgery. Developing further infection is of great concern to grievant, →

**Relief Requested:** ① The necessary steps be taken to promptly approve grievant to see specialist for the surgery to close his open wound; ② The surgeon's order to change grievants dressings three times a day "wet" to dry; ③ That health care staff follow all sanitary measures, like changing gloves while changing dressings.

☒ Check only if this is an EMERGENCY grievance due to a substantial risk of imminent personal injury or other serious or irreparable harm to self.

| Taki Peacock | K67561 | 07/25/13 |
|---|---|---|
| Offender's Signature | ID# | Date |

(Continue on reverse side if necessary)

---

**Counselor's Response (if applicable)**

Date Received: 8/15/13    ☐ Send directly to Grievance Officer    ☐ Outside jurisdiction of this facility. Send to Administrative Review Board, P.O. Box 19277, Springfield, IL 62794-9277

Response: The original grievance & a copy have been forwarded to the C/o. There is no need to send your copy to the C/o, or the HCU. You will receive a final response from the C/o when the HCU responds to same.

| J. Haselle | J.H. | 8/16/13 |
|---|---|---|
| Print Counselor's Name | Counselor's Signature | Date of Response |

---

**EMERGENCY REVIEW**

Date Received: 8/9/13

Is this determined to be of an emergency nature?    ☐ Yes; expedite emergency grievance
☒ No; an emergency is not substantiated. Offender should submit this grievance in the normal manner.

| Michael Lemke | 8/12/13 |
|---|---|
| Chief Administrative Officer's Signature | Date |

Distribution: Master File; Offender          Page 1 of 4          DOC 0046 (8/2012)

to which he asserts here in hopes of immediately receiving proper care.

On July 4, 2013, grievant was severely injured while operating a lawn mower on a steep Hill. In the process approximately a toe and a half was severed. Though grievant received medical attention, his toes were lost for nearly an hour, causing the ambulance to wait until they were found. By the time grievant's toes could be assessed by a surgeon at St. Josephs hospital, the toes were dead and useless, they were not properly preserved for reattachment.

While at St. Josephs hospital, surgeon John Doe informed grievant that a specialist had been contacted and would see grievant Friday July 5th, 2013, or the upcoming July 8th, 2013.

July 10th, 2013, Physician Davis and Medical Director "Obaisi" tells grievant that the open wound of his big toe can be exposed for an unlimited length of time without any risk, damage or danger.

July 11th, 2013, "Obaisi" states to grievant he is still trying to get appointment to see specialist approved.

July 15th, 2013, "Obaisi" then tells grievant he was approved to see specialist.

July 18th, 2013, "Obaisi" turns around and tells grievant the appointment to see specialist is still being set up.

July 23rd, 2013, "Obaisi" states he and some other unknown person is trying to figure out what specialist grievant will be seeing.

According to grievants aforementioned journaled notes, Medical Director "Obaisi" is deliberately delaying grievant the medical treatment he needs to begin recovery to his big toe. It is grievants belief that this delay is due to "Obaisi", a representative for Wexford Health Sources Inc, is in search of the most cost effective method to treat grievant. The surgeon at St. Josephs hospital made it clear grievant was to see a specialist within a week from July 4th, 2013, to have a second surgery that would close his wound. Here you have Medical Director "Obaisi" who is not a foot specialist or surgeon making decisions that require a specialists attention. "Obaisi" is giving grievant the run around with inconsistent statements. To date, nearly three weeks later, and grievant is still with a open wound and have not seen a specialist.

July 4th, 2013, after grievants surgery at St. Josephs hospital, the surgeon wrote out an order for Stateville to follow, stating: "grievants dressing is to be changed three times a day wet to dry."

July 5th, 2013, a Jane Doe nurse/medical technician at Stateville of either african or west indies descent refused to follow the surgeons orders of changing his dressings three times a day wet to dry. In fact, to date grievant has only been receiving one dressing change a day, with July 17th, 2013, being the one and only time he received wet to dry dressings, all other    ——→

next page

Distribution: Master File; Offender

DOC 0046 (8/2012)

Printed on Recycled Paper

times it's been completely dry dressings with ointment.

July 18th, 2013, a african american Jane Doe nurse/medical technician, removed the wet to dry dressing causing grievant more pain than his usual dressings. He expressed his pain and asked could they go back to the less painful dry dressings. As she went to confer with "Obaisi", other nurses stated that the reason for wet to dry is to remove dead tissue. Grievant then stated to "Obaisi", now that he understands the reason, he would endure the pain of wet to dry. In grievants presence "Obaisi" scornfully stated to the nurse "no! change him back to dry only dressings, thats what he asked for!" The fact remains, this is against the surgeon's order for treatment.

July 17th, 2013 while nurse "Jenny" was changing grievants dressing, when she expressed her concerns about the very strong odor and ordered a culture to check for infection. The other nurses and "Obaisi" himself were in disagreement saying the odor was normal. Come July 23rd, 2013, grievant learned that the results of the culture were positive for a bacterial infection. Additionally, in order to spare grievants socks from blood spots, up until July 19th, 2013, it was condoned by the medical staff that he apply an unsanitary piece of plastic bag around his wound, this same piece of plastic and one other piece, was recycled over and over in between dressing changes for eleven days. It was nurse "Amy" that explained to grievant that this process was unsanitary, a breeding ground for bacteria, and frowned upon. Further, on several occasions by several nurses, in the process of changing grievants dressing, they would go from handling everything from keys, to doors, to drawers on over to grievants foot without changing their gloves, despite being informed and made aware in request that they do so.

Stateville doesn't always have an attending physician, in fact at the time of grievants injury, there wasn't one available. According to the MERCK MANUAL of medical information, cleaning wounds thoroughly and removing dead tissue is the best way to prevent infection, in total conjunction with the surgeon's orders. The MERCK MANUAL goes on to state that anaerobic bacteria thrive in decaying tissue and wounds that are particularly deep and dirty, and are poisoned by oxygen. This also supports the surgeons orders and totally adverse to "Obaisi" July 10th, 2013, statement of grievants open wound can be exposed for an unlimited length of time without any risk, damage or danger. In fact, grievants concerns of developing an infection was confirmed on July 23rd, 2013, due to Wexford's longstanding budget cost cutting measures. Grievant may not be denied medical care as a means of saving money. IDOC and Statevilles administrators are both fully aware of just how unsanitary Statevilles environment is, and yet both prison and medical officials are condoning and turning a blind eye on grievants serious medical needs. Grievant request that he immediately

next page ⟶

Distribution: Master File, Offender

Printed on Recycled Paper

DOC 0046 (8/2012)

**OFFENDER'S GRIEVANCE** (Continued)

begin receiving the proper medical care to reverse the effects that's making grievants injury worse that he may begin to recover; i.e., 1.) the surgeon's order that grievants dressings be changed three times a day "wet" to dry be honored; 2.) the appointment to see specialist that was contacted by surgeon, be promptly approved, that grievant may receive the surgery to close his wound; 3.) that the Health Care Unit staff follow all sanitary measures, including but not limited to changing their gloves while attending to the dressings of grievants open wound.

Distribution: Master File; Offender

DOC 0046 (8/2012)

To: MICHAEL BANSHRE
ATTORNEY

EXHIBIT - G

I'm writing this today to give you an clear up date as to the current status. I received the counselor's response to the first grievance. C/O Rigsby, my supervisor stated that all the inside grounds workers receive training (lie) that we were only instructed to mox down hill (another lie). I will be acquiring affidavits from my co-workers to state that fact. He said also that the bag with the toes were not left in the grass in the sun. I found out that that's partially true, it was substantiated by nurse/medtech Shawelle that the bag with my toes was giving to Bobby nurse/medtech & he did sit them down in the grass to wrap up my wound. I now know that that my co-worker Parisi put it in the truck with us & they were left there for all that time until Rigsby was contacted & informed that they were missing. He then went outside & found them in the back of the pick up truck, still left in the sun. Everything in the grievances are true. It's now been 26 days that I've been left with an open wound & I'm continuely being giving the run around. I've sent letters to Louis Shicker I.D.O.C. medical director, Dr. Arthur Funk Wexford regional medical director, warden O'Brien & I've got my family calling them all as well, all in attempt to get them to close up my wound. I was told by a nurse on 07-25-13 that no specialist wants to see me, also that Dr. Obaisi is contacting U.I.C. & trying to slide me in. I was informed that Wexford's contract states that it's their responsibility to get me seen & taken care of even if they have to pay more. I'm in the process of getting that contract & I'll

Send you a copy). Look I need your help, I really want you to represent me. I can't pay now but we can have the courts pay your bill or I can pay you from what I'm awarded. So please help me! Thank you very much for your time!

God Bless!

Sincerely Tali Peacock
#K67561

RACIAL & POLITICAL REPRESSION

EXHIBIT - H

8-1-13

Hello, my name is Taki Peacock & I'm currently incarcerated at Stateville Correctional Facility. I was referred to you by John Cumbee also an inmate, he said that you all could help me with my current medical situation. On July 4th of this year I was assigned as an inside grounds crew & my toes was severed by a lawnmower. I was taken out to the hospital & received surgery. I ultimately lost my complete second toe & the top part of my big toe above the knuckle was sliced off, leaving me with an open wound & an expose bone. The surgeon who operated on me informed me that a specialist in Joliet had been contacted & that he'd see me within four days, either on the 4th or the 8th. Well it's been twenty-eight days now that I've been left with an open wound & exposed bone. Inbetween that time I've had nurses (not all) change my dressing without changing their gloves, the go from handling my wound to handling so many other things without changing their gloves. The medical staff are also not following the surgeon's instructions to change my dressing 3x a day wet to dry, though they have been following the wet to dry direction for about the last two weeks. My wound also got infected, a fact that was discovered by nurse Jenny. I voice my concern to another nurse & medical director Dr. Obaisi the day before a pungent odor & they both stated that the smell was normal & not alarming. The very next day though nurse Jenny smelled the same odor & made a

diagnosis, A correct one, that it was infected. I've been giving the run Around As to why I haven't been sent back out & have my wound closed up. I've been told that no specialist wants see me. I've Also been told that now on multiple occasions that I've been Approved & As of yesterday I've been unApproved. I believe that their using cost Affective measures by trying to leave me this way in An Attempt to let my skin grow back. If that is the truth then that'll take Awhile leaving me At risk for further infections which could ultimately end my life. Can you please help me get these people to treat me. If you help me, you should contact warden O'Brien. I truly thank you for taking the time to listen to my problem & Any help that you can provide would truly be Appreciated.

God Bless you

Sincerely

Tali Peacock

#K67561





**Illinois
Department of
Corrections**

**Pat Quinn**
Governor

**S. A. Godinez**
Director

James R. Thompson Center
100 W. Randolph Street, Suite 4-200
Chicago, IL 60601

Telephone: (312) 814-3017
TDD: (800) 526-0844

Mr. Taki Peacock K67561
Stateville Correctional Center
PO Box 112
Joliet, IL. 60434
August 2nd 2013

Mr. Peacock:

This letter is in response to your recent correspondence to me, dated July 25th 2013 in which you complained about inadequate care of your left big toe.

The facility is looking for a provider to follow up on your toe injury. I have been informed that there are no signs of infection at this time and that follow up care at University of Illinois is being explored.

*Louis Shicker*

Louis Shicker, MD
Agency Medical Director

CC: Debbie Denning, Chief of Programs
    Warden Lemke, Sateville Correctional Center
    Dr. Obaisi, Medical Director Stateville CC
    Ms. Royce Brown-Reed, HCUA Stateville CC
    Ms. Marna Ross, OHS Regional Nurse Coordinator
    Dr. Arthur Funk, Regional Medical Director Wexford Health Sources

**JAMES P. CHAPMAN, Esq.**
Attorney at Law
3629 South Prairie Avenue
Chicago, Il 60653
312/593-6998
E-mail: JamesPChapman@aol.com



August 9, 2013

Mr. Taki Peacock, #K67561
Stateville Correctional Center
P.O. Box 112
Joliet, IL 60434

**Confidential attorney – client communication**

Dear Mr. Peacock,

I am in receipt of your letter of July 25, 2013 requesting legal help with regard to the unfortunate incident which resulted in your very serious injury.

As you may know, I am not taking cases at this point in my career, but I am seeking to find lawyers for prisoners in appropriate cases.

My initial impression is that this a negligence claim, which would be filed in the Illinois Court of Claims. I suggest that you send me a little more detail on why you feel that this severe injury was the result of negligence and could have been prevented.

With regard to Section 1983 claim, I believe that this would be a very difficult case, depending on the facts of how you came to be involved with the lawnmower, how it was maintained, and whether there were any particular staff members who knew that you were being exposed to a danger condition.

The Court of Claims requires that a notice be given of intent to file a lawsuit within one year and that the lawsuit itself be filed within two years; however, these deadlines should be confirmed.

Let me hear from you as soon as possible with regard to my questions. I will then do everything I can to help you find a lawyer or to get your claim on file.

I look forward to hearing from you.

Cordially,

James Chapman

EXHIBIT-K

Aug 9, 2013

DEAR MR. CHAPMAN

I AM IN RECEIPT OF your Aug 9, 2013 letter. In it you suggested that I send you a little more detail on why I feel that my severe injury was the result of negligence And could have been prevented, or shall I say deliberately indifferent.

THEREFORE I HAVE enclosed copies of my grievance thoroughly explaining why I feel there is or may be a deliberate indifference claim as well as negligence.

A notice of intent has been drafted! As soon as we come off lockdown I will have it type up & filed. It is my sincere hope that you see what I see after you have reviewed my grievances.

Additionally, I'm torn between rather or not I'll need a independent expert witness, if available that will demonstrate that, ① the time it took to locate my severed toes may have been the reason they were not reattached, And ② the infection that had set in may have been due to Statesiles Medical Staffs' incompetence And unsanitary care.

I shall provide you with a copy of All the respones during the grievance process, And what I file or plan to file to help you help me find a lawyer.



**UPTOWN PEOPLE'S LAW CENTER**
4413 NORTH SHERIDAN • CHICAGO, IL 60640
PHONE: 773.769.1411 • FAX: 773.769.2224



August 26, 2013

**PRIVILEGED LEGAL CORRESPONDENCE**

Taki Peacock
R67561
Stateville Correctional Center
P. O. Box 112
Joliet, Illinois 60434

Dear Mr. Peacock

        We recently received your letter. To follow up we are requesting the following;

- Grievances and all the replies you've received.
- Medical reports or related documents that you have in your possession.

Please understand that the more information you can send the better we can understand your case or concerns. If at all possible please send copies and retain the originals for your files. If you are unable to send copies, let us know so that we can return the originals to you.

Sincerely yours;

**UPTOWN PEOPLE'S LAW CENTER**



EXHIBIT-M

9-2-13

Dear Uptown
People's Law Center

This letter is in response of your request of my grievances and medical reports. Here are two copies of my grievances and I am in the process of acquiring the medical reports you've requested. Let me bring you up to date where things currently stand. I went out to the U of I on Aug 15th, I was told that my injuries are healing well, which they are. I am awaiting the grievance officer's response. I am also in the process of filing my notice of intent in state court and will also be filing the 1983 deliberate indifference claim in federal court later. I want to inform you that I've sent copies of my grievances to two other attorneys also but am not as of now represented by anyone. Thank you for your time and concern, I look forward to hearing from you. If for some reason you are unable to provide me with representation, can you please send me a letter stating that fact, so that I can provide the courts evidence of my efforts. Thank you; God Bless, Sincerely

Taki Peacock



**UPLC**

UPTOWN PEOPLE'S LAW CENTER

4413 North Sheridan | Chicago, Illinois 60640
Phone: 773.769.1411 | Fax: 773.769.2224
www.uplcchicago.org

# PRIVILEGED LEGAL CORRESPONDENCE

September 20, 2013

Taki Peacock
R67561
Stateville Correctional Center
P.O. Box 112
Joliet, Illinois 60434


Dear Mr. Peacock.

We received your letter and enclosed documents. We are returning the documents you sent us, so that you may keep them in your personal files.

The Prison Litigation and Reform Act requires prisoner to exhaust all administrative remedies prior to filing a civil suit in Federal Court. This means that that prisoner cannot proceed to court until he or she has received a final exhaustion notice from the ARB or the IDOC director. Thus, once you received your response from the ARB or Director's office, please forward it to us.

After we receive your final grievance response, we can start to review your issues and what type of legal claim against the Department you may have.

This is not a guarantee that we or any other pro bono attorney will be able to represent you. This is simply a request for all pertinent materials so that we can do an adequate assessment and investigation of your claims.

Sincerely,


*Uptown People's Law Center*

EXHIBIT-O

10-7-13

Dear People's Law Office

My name is Taki Peacock #K67561 And I am currently an inmate in Stateville correctional. On July 4th of this year I suffered an injury while mowing the lawn here in Stateville. I am currently taken steps in pursuit of a lawsuit, As of now I'm awaiting the grievance officer's response. I submitted my notice to file with the Court of Claims Sep 16th, but I'm also looking to file a 1983 As well.

I am currently in need of counsel, and I was referred to you by another inmate, therefore this is me respectfully requesting representation of counsel from this law firm. I have enclosed two copies of my grievances to give you a thorough understanding of what occurred and the strength of my case. If for any reason you're unable to take on my case, can you please send me a letter stating that you're unable to represent me also I can present it to the courts so that I can meet their qualification and be appointed an attorney. Thank you for your time Sincerely Taki Peacock #K67561

COPY

EXHIBIT-P

Taki Peacock
#K67561
C-1057

18 Oct, 2013

GRIEVANCE OFFICE

G.O.,

I TAKi Peacock HAS submitted two Medical grievance's to your office in regards to the physical injury that severed my toes over 60 days Ago. Both grievances may have been consolidated under grievance #2370. Nevertheless, According to statute's And procedure grievant understands that the G.O. HAS 60 days to review grievances. Therefore, grievant humbly request to know the status of both his grievances.

Respectfully

Taki Peacock

CC: G.O.
   Grievant Peacock #K67561

COPY

EXHIBIT-Q

TAKi PEACOCK
#K67561
C-1057

Oct 27th, 2013

GRIEVANCE OFFICE

G.O.,

I TAKi PEACOCK HAVE submitted two medical grievance's to your office in regards to the physical injury that severed my toes over 60 days ago. Both grievances may have been consolidated under Grievance #2370. Nevertheless, According to statute's and procedure grievant understands that the G.O. has 60 days to review grievances. Therefore, this is grievants second humble request to know the status of both his grievance's.

Respectfully,

Taki Peacock

cc: G.O.
    Grievant Peacock #K67561

COPY
EXHIBIT-R

FROM: TAKI PEACOCK #K67561 C/1057

NOVEMBER 3rd, 2013

TO: GRIEVANCE OFFICER

RE: Request To Address Grievance #2370 : ?

DEAR GRIEVANCE OFFICER,

This correspondence is the third AND FINAL Attempt, Asking that you Address this grievant's grievances #2370 : # ? dated July 23rd, 2013 : July 25, 2013, Regarding the physical injury that severed my toes. Both grievances MAY HAVE been consolidated under Grievance #2370. However, it is court documented that the G.O. HAS 60 days to Address A grievance. It HAS been nearly 90 days that the grievance officer HAS HAd this grievant's said grievances.

Brief correspondence As to the status of your Addressing grievant's grievances WAS Forwarded to you on both October 18, 2013 : October 27, 2013, to date you HAVE remained silent. Your Further silence will equate to your default And Acquiescence that you And your office Are deliberately hindering grievant From exhausting His Administrative remedies. Please respond!

Respectfully submitted,

CC: GRIEVANT, PEACOCK
    GRIEVANCE OFFICE
    John Howard Association

Taki Peacock
TAKI PEACOCK #K67561

Taki Peacock
#K67561
Stateville C.C.
c/o: P.O. Box 112
Joliet, Ill. 60434

EXHIBIT-S

3rd November 2013

JHA of Illinois
375 E. Chicago Ave, Suite 529
Chicago, Illinois 60611

Dear JHA:

I am trying to exhaust my administrative remedies so that I may proceed with a lawsuit. A hinderance of doing so is caused by the Grievance Office stalling the attached grievances, that has been on their desk for nearly 90 days. Also attached is copies of the correspondences to the grievance office attempting to gain the status of said grievances.

Your help as a third party recommending Stateville to following their rules that the G.O. answering shall answer within 60 days would be greatly appreciated. Or whatever help you can provide will suffice.

Sincerely,

Taki Peacock
Taki Peacock

# PEOPLE'S LAW OFFICE

**1180 N. Milwaukee**
**Chicago, Illinois, 60642**
**(773) 235-0070**
**Fax (773) 235-6699**

PeoplesLaw@aol.com

Michael E. Deutsch
Ben H. Elson
Sarah Gelsomino
Janine L. Hoft
Joey L. Mogul
John L. Stainthorp
Jan Susler
G. Flint Taylor, Jr.

*Of Counsel*
Jeffrey H. Haas



Taki Peacock K67561
Stateville Correctional Center
P.O. Box 112
Joliet, IL 60434

November 13, 2013

Dear Taki,

Please forgive us for the delay in responding to your letter. Unfortunately we are a small law office with limited resources. While we believe that you may have legitimate issues to litigate in court we sincerely regret that the People's Law Office is not in a position to assist you with that legal struggle.

Sincerely,

People's Law Office

601 MBE



# John Howard Association of Illinois

375 East Chicago Avenue, Suite 529 Chicago, IL 60611
Tel. 312-503-6300 Fax. 312-503-6306 www.thejha.org

November 20, 2013



EXHIBIT-U

Mr. Taki Peacock #K67561
P.O. Box 112
Joliet, IL 60434

Dear Mr. Peacock,

IDOC's grievance process needs to be reformed. Approximately half of the letters from IDOC inmates to JHA pertaining to prison operations allege that the grievance procedure was followed by the inmate, but the grievance was never answered, was answered months after the form was submitted, or did not resolve the problem. When JHA visits facilities, the grievance process is complained about regularly.

IDOC should resume using the tri-colored form. This would provide a receipt that the grievance was filed. All grievances should be recorded and tracked in each facility. The process should be transparent. Only objective third parties should answer grievances.

We are lobbying IDOC to implement a fair, transparent process capable of addressing intra-agency issues that is open to outside review.

I am not an attorney and any thing I write is not legal advice:

I included a case that you may want to read. Also, you may want to look at what factors are considered when settlements and judgments are created regarding lost body parts.

Regards,

JHA Prison Response Organizer

Promoting Community Safety Through Cost-Effective Prison Reform
Founded in 1901

Nov 25th '13

## ADMINISTRATIVE REVIEW BOARD COMMITTED PERSON'S GRIEVANCE FORM
### (Please print or write clearly)

{ EXHIBIT-V }

DATE: Nov 25th, 2013  FACILITY: Stateville C.C.

LAST NAME: Peacock  FIRST NAME: Taki  I.D. #: K67561
_____(Print)_____                _____(Print)_____

SIGNATURE: Taki Peacock

DATE OF COUNSELOR'S RESPONSE: 7-24-13  (Attach Copy of Response)

DATE OF GRIEVANCE OFFICER'S RESPONSE: G.O. Refuses to Respond (Attach Copy of Response)

If not filed with Counselor and/or Grievance Officer, state reason. _____

_____

Nature of Grievance: (Please check one)

_____ Personal Property        _____ Staff Conduct

_____ Protective Custody       _____ Medical Issues

_____ Transfer                 _____ Mail Handling

_____ Restoration of Good Conduct Credits/Statutory Good Time

_____ Community Correctional Center Placement

_____ Disciplinary Report (Date: _____ Facility where DR was issued: _____ )

✓ Other: Severe Physical Injury

Brief Summary of Grievance: (may use other side if necessary)

_____ This grievant, Taki Peacock, under the supervision of Correctional Officer "Rigsby" lost a toe and severely damaged another toe in a preventable lawn mower accident that occurred 7-4-13.

_____ On 7-23-13, grievant filed a detailed grievance with all of the facts as he recalled and understood. Counselor Jill Hosselton answered-

Relief Sought: That the A.R.B. contact the STA G/O. for the pertinent info that the A.R.B. may exercise 504.870.(b) in a timely fashion. The same relief requested in grievant's 7-23-13 grievance is also herein incorporated.

DC 7089 IL    P-728                                                    (over)

ARB COMMITED PERSON'S GRIEVANCE FORM (Continuation page)

DATE: NOV 25th, 2013

LAST NAME: Peacock (Print)   FIRST NAME: Taki (Print)

I.D.#: K67561   FACILITY: Stateville C.C.

this grievance on 7-24-13 to which grievant received on 7-25-13. On 7-26-13, grievant prepared a written response to the Counselor's response, attached it to the grievance and forwarded it to the G/O. (Copies attached).

On 7-25-13, grievant filed a Emergency Grievance directly to the C.A.O as a continuation to his 7-23-13 grievance. This 7-25-13 Emergency Grievance was deemed not an Emergency by the C.A.O. on 8-13-13, and returned to grievant with a G/O stamp of STA# 2370 dated Aug 8th 2013. Grievant forwarded said grievance to the counselor. Counselor responded 8-16-13 stating said grievance has been forwarded to the G/O, grievant need not send his copy. (Copies attached)

On three seperate occassions, 10-18-13, 10-27-13 & 11-3-13, grievant sent written correspondences to the G/O seeking the status of his grievances. To date, the G/O refuses to answer. According to 504.830(d) the G/O has approx. 60 days to answer a grievance. Grievant's 7-23-13 grievance has been with the G/O for over 120 days, his 7-25-13 Emergency Con-tinuation grievance has been with the G/O for over 90 days, both well over 60 days.

Grievant has 1 year to exhaust his Administrative remedies if he chooses to bring forth a State claim, and 2 years to bring forth a federal claim. It appears that the G/O is deliberately holding grievant's grievances so that he may not be able to exhaust his Administrative Remedies in a timely manner, and thus be time barred from bringing suit. Now comes grievant alerting the A.R.B. in hopes that the G/O will be forced to work with the A.R.B. to expedite the Exhaustion of grievant's Administrative Remedies. — End of summary —

ILLINOIS DEPARTMENT OF CORRECTIONS
## RESPONSE TO COMMITTED PERSON'S GRIEVANCE

| Grievance Officer's Report | | |
|---|---|---|

Date Received: _____ 7/29/13     Date of Review: _____ 1/23/14      Grievance # (optional): 2260

Committed Person: Taki Peacock            ID#: K67561

Nature of Grievance: Staff Conduct -- Performance of Duty

*EXHIBIT-W*

**Facts Reviewed:** Grievant claims that he was not given proper training or equipment while working grounds and as a result he lost his toes in a mower accident. He wants monetary compensation.

**Per Counselor Hosselton's Response:** "Per C/O Rigsby, inside grounds workers are instructed in safety with the mowers when they start. It is normal procedure for inside grounds workers to have to mow hills. Inside ground workers are instructed to only mow downhill. On the day (7/4/13) of the accident the grass was not wet. The toes were not misplaced out in the sun, they were in the back of the Inside Grounds Truck. 434's were written."

Grievance Officer finds that grievant was seen and treated by medical staff. There is insufficient evidence to prove any staff misconduct. Monetary award(s) is outside the scope of the Grievance Officer.

**Recommendation:**     **Grievance denied.**

Anna McBee, CCII
     Print Grievance Officer's Name                    *Anna McBee*          Grievance Officer's Signature
**(Attach a copy of Committed Person's Grievance, including counselor's response if applicable)**

| Chief Administrative Officer's Response | | |
|---|---|---|

Date Received: __2/5/14__    ☑ I concur     ☐ I do not concur     ☐ Remand

Comments:

*Michael Nagan* 4k     2/7/14
Chief Administrative Officer's Signature                                   Date

| Committed Person's Appeal To The Director | | |
|---|---|---|

I am appealing the Chief Administrative Officer's decision to the Director. I understand this appeal must be submitted within 30 days after the date of the Chief Administrative Officer's decision to the Administrative Review Board, P.O. Box 19277, Springfield, IL 62794-9277. (Attach a complete copy of the original grievance, including the counselor's response, if applicable, and any pertinent documents.)

*Taki Peacock*          K67561          2/21/14
Committed Person's Signature                 ID#                  Date

*EXHIBIT-X*

## NOTICE OF FILING

**To:** Administrative Review Board, Office of Inmate Issues, P.O. Box 19277, Springfield, IL 62794-9277.

PLEASE TAKE NOTICE, that on the 21st day of February, 2014, I have caused the attached GRIEVANCE, GRIEVANT'S RESPONSE TO COUNSELOR'S RESPONSE, and GRIEVANCE OFFICER'S REPORT, to be sent to the above named party.

_Taki Peacock_
Taki Peacock

## CERTIFICATE OF SERVICE

I hereby certify that a true correct original copy of the attached privileged documents have been served on the above named party. The same being sent via the United States mail, with proper postage having been paid at the Stateville Correctional Center on the 21st day of February, 2014.

_Taki Peacock_
Taki Peacock, #K-67561
Stateville Correctional Center
Post Office Box 112
Joliet, Illinois [60434-0112]

Subscribed and sworn to before me
this 21st day of February, 2014.

_Jill E Hosselton_
NOTARY PUBLIC

OFFICIAL SEAL
JILL E HOSSELTON
NOTARY PUBLIC, STATE OF ILLINOIS
KANKAKEE COUNTY
MY COMMISSION EXPIRES: 5/31/2017

EXHiBiT - Y

TAKi PEACOCK
#K67561
STATESViLLE C.C.
P.O. BOX 112
JoLiET, IL. 60434

MAY 27, 2014

AdMiNisTRATiVE REViEW BOARD
OFFICE OF INMATE iSSUES
P.O. BOX 19277
SPRiNGFiELD, IL. 62794-9277

RE: STATUS OF GRiEVANCES #2260 & #2370

DEAR A.R.B.:
        I AM iN bRiEF CORRESPONDENCE WiTH YOU
to REQUEST THE STATUS OF GRiEVANCE WRiTTEN 23
JULY 2013 bEARiNG GRiEVANCE OFFICE #2260-SUB-
MiTTED TO YOUR OFFICE FEb 21, 2014; AND THE STATUS
OF GRiEVANCE WRiTTEN 23 JULY 2013 & 7/25/13
bEARiNG GRiEVANCE OFFICE #2370-SUbMiTTED TO YOUR
OFFICE NOV. 25TH, 2013

DATE: _____    X Taki Peacock

*EXHIBIT - 21*

STATE OF ILLINOIS — DEPARTMENT OF CORRECTIONS

**ADULT AND JUVENILE DIVISIONS**
**INCIDENT REPORT**

Institution/Program: Statville    Date and Time of Incident: 7/7/13 10⁰⁰ am

If the answer is yes to any of the following questions, explain in narrative below:

A. Was a Weapon Involved: YES ☐ NO ☑   B. Were Restraints/Force Used: YES ☐ NO ☑   C. Was Property Damaged: YES ☐ NO ☑

D. Have Apprehension Unit and/or Law Enforcement Agencies Been Notified: YES ☐ NO ☑   E. Were Arrests Made: YES ☐ NO ☑

F. Any Injuries/Hospitalizations: YES ☑ NO ☐   G. Were there Media Inquiries: YES ☐ NO ☑

Inmates/Staff Involved:

| Name | I.D.# | Offense | Commitment Date |
|---|---|---|---|
| Peacock, Taki | K67561 | | |
| Janotas, Nicole | RN | | |

Witness to Incident:

| Name | I.D.# |
|---|---|
| | |

*RECEIVED 2013 OPERATIONS*

Statement of Facts: (NARRATIVE) On the above date and approximate time a Code 3 was called. While waiting for the responding Med Tech to bring IM Peacock K67561 to the HCU the operator called and asked this RN if IM Peacock K67561 was being sent to the hospital. This RN contacted Med Tech who reported she had not assessed IM Peacock K67561 yet. This RN informed the operator no assessment had been made by medical yet and to wait to call the ambulance. Approximately 2 minutes later responding Med Tech called requesting an ambulance. This RN notified operator and was connected with Kurtz ambulance requesting IM pickup at Statville HCU. End of Report

Reporting Employee | Date/Time 7/4/13 11:00 am | Person Calling in Report | Person Accepting Report | Date/Time 1/4/13 11:35a

Administrative Assessment:
HCU/Communications

Chief Administrative Officer _____   Date/Time 7/08/2013 7:36p

Distribution:   Director
Deputy Director of Appropriate Division
Deputy Director of Bureau of Inspections and Audits
Legal Services (only if restraints/force used)
File

DC 434 (4/83)
IL 426-0410

EXHIBIT-Z2

STATE OF ILLINOIS — DEPARTMENT OF CORRECTIONS

**ADULT AND JUVENILE DIVISIONS**
**INCIDENT REPORT**

Institution/Program: STA     Date and Time of Incident: 7/4/13 105AM

If the answer is yes to any of the following questions, explain in narrative below:

A. Was a Weapon Involved: YES ☐ NO ☒   B. Were Restraints/Force Used: YES ☐ NO ☒   C. Was Property Damaged: YES ☐ NO ☒

D. Have Apprehension Unit and/or Law Enforcement Agencies Been Notified: YES ☐ NO ☒   E. Were Arrests Made: YES ☐ NO ☒

F. Any Injuries/Hospitalizations: YES ☒ NO ☐   G. Were there Media Inquiries: YES ☐ NO ☒

Inmates/Staff Involved:

| Name | I.D.# | Offense | Commitment Date |
|------|-------|---------|-----------------|
| Peacock | K67561 | | |

Witnesses to incident:

| Name | I.D.# |
|------|-------|

RECEIVED OPERATIONS 2013

Statement of Facts: (NARRATIVE)

On the above date and approx this writer Megan Pipas LPN called Dr. Pansi to get order to send I/M Peacock ID#67561 to send I/M to St. Joe Hospital for further eval assessment and treatment after to Big toe and half of second toe were amputated. EOR

| | | |
|---|---|---|
| 7/4/13 1130Am | | 7/4/13 1135a |
| Date/Time | Person Calling in Report | Person Accepting Report | Date/Time |

Administrative Assessment: HCU

Chief Administrative Officer _____    Date/Time 7/08/2013 720

Distribution: Director
Deputy Director of Appropriate Division
Deputy Director of Bureau of Inspections and Audits

Legal Services (only if restraints/force used)
File

DC 434 (4/83)
IL 426-0410

STATE OF ILLINOIS — DEPARTMENT OF CORRECTIONS

**ADULT AND JUVENILE DIVISIONS**
**INCIDENT REPORT**

*EXHIBIT-Z3*

Institution/Program: STATEVILLE CORRECTIONAL CENTER  Date and Time of Incident: 7-4-13 / Approx. 10:05 AM

If the answer is yes to any of the following questions, explain in narrative below:

A. Was a Weapon Involved: YES ☐ NO ☑  B. Were Restraints/Force Used: YES ☐ NO ☑  C. Was Property Damaged: YES ☐ NO ☑

D. Have Apprehension Unit and/or Law Enforcement Agencies Been Notified: YES ☐ NO ☑  E. Were Arrests Made: YES ☐ NO ☑

F. Any Injuries/Hospitalizations: YES ☑ NO ☐  G. Were there Media Inquiries: YES ☐ NO ☑

**Inmates/Staff Involved:**
Name: INMATE PEACOCK  I.D.# K67561  Offense  Commitment Date

OFFICER: C/O B. RIGSBY

**Witnesses to Incident:** Name  I.D.#
RECEIVED OPERATIONS

**Statement of Facts: (NARRATIVE)**

ON THE ABOVE DATE AND APPROX. TIME THIS C/O OBSERVED INMATE PEACOCK K67561 (INSIDE GROUNDS CREW) ON THE GROUND AND HAD JUST INJURED HIMSELF WITH HIS PUSH MOWER WHILE CUTTING GRASS IN THE BACK OF THE INSTITUTION BETWEEN TOWER #5, AND TOWER #9, THIS C/O NOTICED THAT INMATE PEACOCK K67561 HAD INJURED HIS LEFT FOOT AND CUT OFF WHAT APPEARED TO BE TWO TOES. THIS C/O APPLIED PRESSURE TO THE INJURED FOOT AND CALLED A CODE 3 GIVING BASE MY LOCATION, AND WRAPPED THE TWO TOE PARTS IN A DRY CLOTH AND PUT INTO A BAG OF ICE THAT WAS GIVEN DIRECTLY TO MED. TECH NAGPAL WHO ARRIVED ON THE SCENE ALONG WITH THE SHIFT COMMANDER, MAJ. TORRI, AND ADDITIONAL STAFF TO HELP. INMATE PEACOCK K67561 WAS TAKEN TO THE HEALTH CARE UNIT FROM THAT LOCATION.

END OF REPORT

Date/Time: 7-4-13 11:07 AM  Person Calling in Report  Person Accepting Report  Date/Time: 7/4/13 1225p

Administrative Assessment: HCU

Chief Administrative Officer  Date/Time: 7/08/2013 725

Distribution: Director
Deputy Director of Appropriate Division
Deputy Director of Bureau of Inspections and Audits
Legal Services (only if restraints/force used)
File

DC 434 (4/83)
IL 426-0410

EXHIBIT - 24

STATE OF ILLINOIS — DEPARTMENT OF CORRECTIONS
ADULT AND JUVENILE DIVISIONS
INCIDENT REPORT

Institution/Program: _____ Cta _____          Date and Time of Incident: 7-4-13    10:30 A

If the answer is yes to any of the following questions, explain in narrative below:

A. Was a Weapon Involved: YES ☐ NO ☑    B. Were Restraints/Force Used: YES ☐ NO ☑    C. Was Property Damaged: YES ☐ NO ☑

D. Have Apprehension Unit and/or Law Enforcement Agencies Been Notified: YES ☐ NO ☑    E. Were Arrests Made: YES ☐ NO ☑

F. Any Injuries/Hospitalizations: YES ☑ NO ☐    G. Were there Media Inquiries: YES ☐ NO ☑

| Inmates/Staff Involved | | | | | Witnesses to Incident | |
|---|---|---|---|---|---|---|
| Name | I.D.# | Offense | | Commitment Date | Name | I.D.# |
| Peacock | K67561 | | | | | |

RECEIVED
JUL 2013
OPERATIONS

Statement of Facts (NARRATIVE)   On above date and approximate time I/m Peacock K67561 was brought into HCU. I/m Peacock K67561 was evaluated by HCU staff till ambulance come to escort him to St Joseph. EOR

| Reporting Employee | Date/Time | Person Calling in Report | Person Accepting Report | Date/Time |
|---|---|---|---|---|
| ▓▓▓▓▓ | 7/4/13 10:45A | | ▓▓▓▓▓ | 7/4/13 12:40 |

Administrative Assessment: None

Chief Administrative Officer ▓▓▓▓▓          Date/Time 7/08/2013   720a

Distribution:   Director
Deputy Director of Appropriate Division
Deputy Director of Bureau of Inspections and Audits

Legal Services (only if restraints/force used)
File

DC 434 (4/83)
IL 426-0410





EXHIBIT-Z5

## Illinois
### Department of
## Corrections

**PAT QUINN**
Governor

**S.A. GODINEZ**
Director

1301 Concordia Court / P.O. Box 19277 / Springfield IL 62794-9277 / Telephone: (217) 558-2200 / TDD: (800) 526-0844

November 25, 2014

Taki Peacock
Register No. K67561
Stateville Correctional Center

Dear Mr. Peacock:

This is in response to your grievances received on December 3, 2013 and February 26, 2014, regarding staff conduct (compensation for physical injury), which was alleged to have occurred at Stateville Correctional Center. This office has determined the issue will be addressed without a formal hearing.

This office is in receipt of your grievances dated July 23, 2013 and July 25, 2013 in which you state that you suffered a physical injury due to unsafe work assignment. Specifically you state on July 4, 2013 you were instructed to cut the "hill" and while pulling the mower back up slipped on wet grass and your foot went under the mower severing half your second toe and all of the big toe. You claim you were given little to no training and that the Officer told you to cut the hill whatever way you feel comfortable. You state the toes were wrapped in ice, however at one point staff could not locate them. You state you believe they were left at the scene of the accident for an hour in the sun. You state upon arrival to the hospital you were told by the surgeon that the toes could not be reattached. When sent back to Stateville you indicate you were housed in the Health Care Unit but were given inconsistent amounts of pain medication and antibiotics. You also state that you were told by another officer that lawn mowers should not be used on the ""hill" and you believe CO Rigsby was indifferent to the chance of injury.

In the July 25, 2013 grievance you state that inadequate medical care caused an infection in your foot. You state you were told by Dr. Obasi that you would see a specialist. You state this was delayed and believe Dr. Obasi to be at blame. You also state Stateville did not follow the medical orders of the hospital regarding dressing changes and other sanitary measures, as such your foot became infected.

The Grievance Officer's Report (2260 & M721)) and subsequent recommendation dated January 23, 2014 and August 4, 2014 and approval by the Chief Administrative Officer on February 7, 2014 and August 12, 2014 have been reviewed.

Additionally, this office reviewed internal incident reports written after the incident. There were no witnesses to the fall however upon being made aware staff immediately called for medical assistance and offender was transported to the hospital. Staff note that the toes were placed in ice and given to the Med Tech. Staff provided information that grounds workers are instructed in safety with mowers. Additionally, upon return to the facility offender was housed in the Health Care Unit and treated according to instructions from the Medical Director. Offender was also referred to a podiatrist.

Based on a total review of all available information, it is the opinion of this office that the issue was appropriately addressed by the institutional administration. It is, therefore, recommended the grievance be regarding medical care be denied as orders from Medical Director were followed. In regard to staff conduct this office recommends grievance be denied as there is no indication the accident was through fault of staff negligence.

FOR THE BOARD: _____

Terri Anderson
Administrative Review Board
Office of Inmate Issues

CONCURRED: _____ 11/25/14

S.A. Godinez
Director

cc:  Warden, Stateville Correctional Center
     Taki Peacock, Register No. K67561