## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| TAKI PEACOCK, (K-67561), | ) | |
| | ) | |
| Plaintiff, | ) | No. 15 C 1884 |
| | ) | |
| v. | ) | Honorable Thomas M. Durkin |
| | ) | Judge Presiding |
| B. RIGSBY, et al., | ) | |
| | ) | |
| Defendants. | ) | |

### ANSWER TO PLAINTIFF'S THIRD AMENDED COMPLAINT

NOW COME defendants, NICHOLAS LAMB, AVEEN NAGPAL, BRANDON RIGSBY and PATTY TORRI, by and through their attorney LISA MADIGAN, Attorney General of the State of Illinois, and for their Answer to Plaintiff's Third Amended Complaint state the following:

### JURISDICTION and VENUE

1. This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1343(a)(1)-(3) because the matters in controversy arise under the Constitution and 42 U.S.C. § 1983.

**ANSWER:** **Admit that this Court has jurisdiction.**

2. Venue in this judicial district is proper under 28 U.S.C. §§ 1391(b)(1) and (2) because the events giving rise to Plaintiff's claim occurred at Stateville Correctional Center ("Stateville") in Crest Hill, Illinois, which is located within this judicial district.

**ANSWER:** **Admit that venue is proper in this district.**

### PARTIES

3. Plaintiff Taki Peacock is and was, at all times relevant hereto, a prisoner in the custody of the Illinois Department of Corrections ("IDOC") and incarcerated at Stateville.

**ANSWER:** **Admit.**

4. Defendant B. Rigsby is a Correctional Officer/Safety and Sanitation Grounds Crew Supervisor at Stateville.

**ANSWER: Admit that Rigsby is a Correctional Officer at Stateville and deny the remaining allegations in the above paragraph.**

5. Defendant Saleh Obaisi is a Physician/Medical Director in Stateville's Health Care Unit.

**ANSWER: Admit.**

6. Defendant Aveen (Bobby) Naqpal is a Medical Technician/Nurse in Stateville's Health Care Unit.

**ANSWER: Admit that Nagpal is a Correctional Medical Technician at Stateville and deny the remaining allegations in the above paragraph.**

7. Defendant Shanelle Doe is a Nurse in Stateville's Health Care Unit.

**ANSWER: Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in the above paragraph.**

8. Defendant Defendant Jane Doe is a nurse in the Stateville Health Care Unit.

**ANSWER: Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in the above paragraph.**

9. Defendant Patty Torri is a Major for Stateville.

**ANSWER: Admit.**

10. Defendant Dr. Davis is a former physician in the Stateville Health Care Unit.

**ANSWER: Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in the above paragraph.**

11. Defendant Nick Lamb is currently the Acting Warden at Stateville.

**ANSWER:** **Admit that Lamb was the Assistant Warden of Operations at Stateville and deny the remaining allegations in the above paragraph.**

12. Defendant Walter Nicholson is currently the Assistant Warden at Stateville. On information and belief, he has oversight over the Stateville Health Care Unit.

**ANSWER:** **Admit that Nicholson is the Assistant Warden od Programs at Stateville and deny the remaining allegations in the above paragraph.**

13. Defendant Wexford Health Sources, Inc. ("Wexford"), is a Florida corporation doing business in Illinois that is under contract with the IDOC to provide health services at Stateville.

**ANSWER:** **Admit that Wexford Health Sources has a contract with the IDOC to perform health services but defendants are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in the above paragraph.**

14. On information and belief, many of the medical personnel employed, including the medical Defendants named herein, at Stateville are employed through Wexford.

**ANSWER:** **Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in the above paragraph.**

## PREVIOUS LAWSUITS BY PLAINTIFF

15. Plaintiff has not filed any other lawsuit at any time either dealing with the same facts alleged herein or otherwise relating to his imprisonment.

**ANSWER:** **Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in the above paragraph.**

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

16. Plaintiff has exhausted the administrative remedies available to him (see attached November 25, 2014 Denial of Grievance by the IDOC Administrative Review Board).

**ANSWER:** **Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in the above paragraph.**

## FACTS

17. On November 15, 2012, Plaintiff Peacock became employed as a landscaper inside the grounds of the Stateville Correctional Center. Plaintiff's supervisor was Defendant/Correctional Officer B. Rigsby.

**ANSWER:** **Admit that Plaintiff was became employed as an inside grounds caretaker on November 9, 2012 through August 16, 2013 and are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in the above paragraph.**

18. In April 2013, Plaintiff for the first time began to mow the grass at Stateville.

**ANSWER:** **Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in the above paragraph.**

19. Plaintiff did not receive mowing training from Defendant Rigsby.

**ANSWER:** **Deny.**

20. Upon beginning his mowing duties, neither Defendant Rigsby nor any other Department of Corrections employee supplied Plaintiff with steel-toe boots and/or other mowing safety equipment/gear.

**ANSWER:** **Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in the above paragraph.**

21. Plaintiff only ever received cotton gloves and goggles with which to perform his mowing duties.

**ANSWER:** **Admit that the above materials were supplied to inmates by IDOC.**

22. When Plaintiff was cutting the grass at Stateville, Defendant Rigsby at one point told Plaintiff words to the effect, "Think that's something, wait until you cut the 'hill'."

**ANSWER:** **Deny.**

23. At some point in April 2013, (at the direction of Rigsby) Plaintiff began to mow the hill.

**ANSWER:** **Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in the above paragraph.**

4

24. Almost every time Plaintiff and others would mow the hill, either Plaintiff or a coworker would slip and fall while mowing.

**ANSWER: Deny.**

25. Defendant Rigsby often laughed or cracked jokes when the mowers would slip and fall.

**ANSWER: Deny.**

26. On July 4, 2013, at approximately 8:00 a.m., Defendant Rigsby instructed Plaintiff to cut the hill.

**ANSWER: Admit.**

27. The hill was wet that day.

**ANSWER: Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in the above paragraph.**

28. Defendant Rigsby left Plaintiff unsupervised to mow, so that he could mow another area with a tractor.

**ANSWER: Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in the above paragraph.**

29. Plaintiff began to mow the hill in an up-and-down manner. While pulling the mower up, Plaintiff slipped on the wet grass, and his left foot caught the blades under the mower, severing two toes.

**ANSWER: Admit that plaintiff suffered an injury to his toes and are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in the above paragraph.**

30. Defendant Rigsby arrived on the scene shortly thereafter and called a Code 3. Pressure was applied to Plaintiff's foot, and his toe pieces were placed directly on ice. A Stateville nurse, Medical Technician Naqpal, Shift Commander Torri, and Rigsby had knowledge that the toes were placed directly on ice.

**ANSWER:** **Admit that Rigsby arrived on the scene and called a Code 3, medical emergency. Defendants are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in the above paragraph.**

31. Severed body parts like toes should not be placed directly on ice as this can cause a freezer burn-like effect which can lead to the severed part not being able to be reattached.

**ANSWER:** **Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in the above paragraph.**

32. It is a basic tenet of medical first aid that severed body parts not be placed in direct contact with ice.

**ANSWER:** **Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in the above paragraph.**

33. The Shift Commander, Major Torri, arrived a few minutes later and told coworkers to slide Plaintiff down the hill and place him down on the grass in an open field.

**ANSWER:** **Admit that Plaintiff was transported to a safe place after the incident.**

34. Major Torri ordered coworkers to place Plaintiff in the bed of a pick-up truck to be transported to the Health Care Unit.

**ANSWER:** **Admit that Plaintiff was transported to the Health Care Unit after the incident.**

35. Plaintiff was taken to the Health Care Unit where he waited for an ambulance to be transported to St. Joseph's Hospital in Joliet, Illinois.

**ANSWER:** **Admit that Plaintiff was transported to St. Joseph's Hospital and are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in the above paragraph.**

36. While waiting for the ambulance, Plaintiff overheard chatter amongst the medical personnel that Plaintiff's toes had been misplaced.

**ANSWER:** **Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in the above paragraph.**

37. The ambulance arrived, but Plaintiff could not be transported immediately to St. Joseph's Emergency Room. Rather, he had to wait until Defendant Rigsby located and brought the bag of toes into the Health Care Unit.

**ANSWER:** **Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in the above paragraph.**

38. Plaintiff believes that it was more than an hour between the time of his injury and time of his departure to St. Joseph's Emergency Room.

**ANSWER:** **Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in the above paragraph.**

39. A physician at St. Joseph's Hospital examined and assessed Plaintiff's damaged/injured foot and explained surgery would be required.

**ANSWER:** **Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in the above paragraph.**

40. A surgeon first informed Plaintiff that they would be trying to reattach Plaintiff's toes.

**ANSWER:** **Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in the above paragraph.**

41. Some time later, the surgeon returned explaining that they would not be reattaching Plaintiff's toes; but, that his second toe would be reduced to a nub and the big toe surgically cleaned.

**ANSWER:** **Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in the above paragraph.**

42. After surgery, the surgeon wrote out an order for Stateville's medical staff to follow, stating that Plaintiff's dressing was to be changed three times a day, wet to dry, and providing for a regimen of medications.

**ANSWER:** **Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in the above paragraph.**

43. Plaintiff was taken back to the Health Care Unit at Stateville and admitted to the infirmary.

**ANSWER:** **Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in the above paragraph.**

44. During Plaintiff's four-day stay in the infirmary, Plaintiff was given an inconsistent amount of Motrin (painkillers) and Bactrin (antibiotics) contrary to the surgeon's order.

**ANSWER:** **Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in the above paragraph.**

45. On July 5, 2013, a Stateville nurse of a foreign Caribbean or African native descent, stated that "it was not necessary to change Plaintiff's dressing three times a day" and changed the medical order to one dressing change per day.

**ANSWER:** **Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in the above paragraph.**

46. On July 9, 2013, neither pain nor antibiotic meds were delivered. As a result, Plaintiff suffered a great deal of pain.

**ANSWER:** **Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in the above paragraph.**

47. On July 10, 2013, Plaintiff was told by Dr. Saleh Obaisi and Dr. Davis that his open wound could be exposed for an unlimited length of time without risk of damage or danger.

**ANSWER:** **Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in the above paragraph.**

48. While in the Health Care Unit, former Grounds Crew Supervisor Correctional Officer Maui informed Plaintiff that as Supervisor, he only allowed the use of mowers on the front and two sides of the hill, but not the back of the hill where Plaintiff's injury occurred. Maui only allowed the use of weed-whackers on this portion of the hill.

**ANSWER:** **Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in the above paragraph.**

49. On July 11, 2013, Obaisi told Plaintiff that in the Civil War, for those who lost limbs, their wounds would be left open and skin would grow back.

**ANSWER: Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in the above paragraph.**

50. On July 16, 2013, a pungent odor arose from Plaintiff's wound while getting a dressing change.

**ANSWER: Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in the above paragraph.**

51. Dr. Obaisi said the odor was normal and not alarming.

**ANSWER: Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in the above paragraph.**

52. On July 17, 2013, a Stateville nurse was changing Plaintiff's dressing and expressed deep concern about the very strong odor coming from Plaintiff's wound. She commented that Plaintiff's wound may be infected and ordered a culture.

**ANSWER: Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in the above paragraph.**

53. On July 20, 2013, Plaintiff began to feel a strong, sharp pain and some numbness to his toes and left leg.

**ANSWER: Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in the above paragraph.**

54. On July 23, 2013, Plaintiff was informed by Dr. Obaisi that the culture of his wound came back on July 22 positive for an infection.

**ANSWER: Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in the above paragraph.**

55. Defendants disregarded an excessive risk to Plaintiff's safety.

**ANSWER: Deny.**

## COUNT I –FAILURE TO PROVIDE SAFE WORKING CONDITIONS

56. Plaintiff reincorporates and realleges Paragraphs 1-55 into Count I of the Complaint as if fully set forth herein.

**ANSWER: Defendants restate their answers to Paragraphs 1-55.**

57. Defendant Rigsby, acting under color of state law, with prior knowledge of the unsafe mowing condition of the hill and grounds crew workers falling when mowing the hill at Stateville, exercised deliberate indifference towards Plaintiff: (1) by failing to provide him adequate training and safety gear for mowing the hill when such gear had been requested previously; and (2) then requiring Plaintiff to mow the hill on July 4, 2013. Defendant Rigsby's deliberate indifference deprived Plaintiff of a right secured by the Constitution and/or a statute of the United States by causing directly or proximately Plaintiff's slipping and falling while mowing the hill and his suffering the severing of two toes and attendant pain.

**ANSWER: Deny.**

## COUNT II – FAILURE TO PROVIDE INADEQUATE MEDICAL CARE

58. Plaintiff reincorporates and realleges Paragraphs 1-57 into Count II of the Complaint as if fully set forth herein.

**ANSWER: Defendants restate their answers to Paragraphs 1-57.**

59. On information and belief, Defendant Wexford, acting under color of state law, has implemented and maintained a policy and/or practice of: (1) requiring its staff at Stateville to disregard the medical care prescriptions of outside treating physicians if the cost is too expensive; and/or (2) requiring its staff to not provide required medical treatment if the cost is too high. Wexford's conduct alleged herein deprived Plaintiff of a right secured by the Constitution and/or a statute of the United States by causing Plaintiff to suffer additional prolonged, unnecessary pain.

**ANSWER: Deny.**

60. Defendants Rigsby, Torri, and Naqpal, under color of state law, exercised deliberate indifference towards Plaintiff by failing to properly preserve his severed toes as required by basic first aid practices. On information and belief, Defendants' failure led to treating physicians at St. Joseph's hospital not being able to reattach his toes, but rather led to a further

amputation of his toes. Defendants' conduct alleged herein deprived Plaintiff of a right secured by the Constitution and/or a statute of the United States.

**ANSWER:** **Deny.**

61. Stateville nurses acting under color of state law, exercised deliberate indifference towards Plaintiff by purposefully ignoring and failing to follow the treating doctor's orders regarding care for Plaintiff's wounds. On information and belief, the nurses did so as a result of following Defendant Wexford policy. Defendant Wexford's policy led to Plaintiff's wound becoming infected, which caused Plaintiff unnecessary additional pain and suffering. Defendant's conduct alleged herein deprived Plaintiff of a right secured by the Constitution and/or a statute of the United States.

**ANSWER:** **Deny.**

62. Defendants Dr. Obaisi and Dr. Davis, all acting under color of state law, exercised deliberate indifference towards Plaintiff by purposefully failing to follow the wound care prescribed by the treating physicians. Defendants' failure caused Plaintiff's wound to become infected and to suffer avoidable pain and prolonged the healing time stemming from the infection. On information and belief, Defendants did so as a result of following Wexford policy. Defendants' conduct alleged herein deprived Plaintiff of a right secured by the Constitution and/or a statute of the United States.

**ANSWER:** **Deny.**

WHEREFORE, Plaintiff prays that this Court enter an order:

A. Enjoining Defendant Wexford from maintaining policies that ignore prescribed medical care that result in improper medical care from being used because of cost;

B. Enjoining Defendant Rigsby to provide proper training and safety gear for mowing at Stateville;

C. Enjoin Defendant Rigsby to cease requiring inmates to mow the hill;

D. Enjoining Defendants to provide proper first aid when dealing with severed body parts;

E. Award Plaintiff damages in a sufficient amount to compensate him for the loss of his severed toes and the related pain and suffering he endured as a result of Defendants' deliberate indifference;

F. Punitive Damages; and,

G. Any additional relief that the Court deems just and proper.

**ANSWER:** Deny. Defendants further state that Plaintiff is entitled to no type of relief whatsoever.

## GENERAL DENIAL

Defendants deny each and every allegation not specifically admitted herein.

## AFFIRMATIVE DEFENSES

### First Affirmative Defense

At all times relevant herein, Defendants acted in good faith and in furtherance of lawful objectives without violating Plaintiff's clearly established statutory or constitutional rights of which a reasonable person would have known. Defendants are therefore protected from suit by the doctrine of qualified immunity.

### Second Affirmative Defense

Defendants' personal involvement has not been established with sufficient specificity to state a claim upon which relief can be granted.

## JURY DEMAND

Defendants demand a trial by jury on all issues herein triable.

Respectfully submitted,

LISA MADIGAN
Attorney General of Illinois         By:    s/James P. Doran
                                            JAMES P. DORAN
                                            Assistant Attorney General
                                            General Law Bureau
                                            100 W. Randolph St., 13th Fl.
                                            Chicago, Illinois 60601
                                            (312) 814-7202