UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| TAKI PEACOCK, | |
| Plaintiff, | |
| v. | No. 15 C 1884 |
| BRANDON RIGSBY; AVEEN NAGPAL; PATTY TORRI; WARDEN NICHOLAS LAMB; ASSISTANT WARDEN WALTER NICHOLSON; DR. SALEH OBAISI; DR. ANN HUNDLEY DAVIS; WEXFORD HEALTH SOURCES, INC., | Judge Thomas M. Durkin |
| Defendants. | |

**MEMORANDUM OPINION AND ORDER**

Taki Peacock, an inmate at Stateville Correctional Center, alleges that Stateville staff and medical service providers were deliberately indifferent to the risk posed by mowing the grass on a certain hill on Stateville's grounds, and to an injury Peacock suffered while mowing the grass. *See* R. 35. Wexford Health Sources, Inc.—Stateville's medical services provider—and Wexford employees—Dr. Saleh Obaisi and Dr. Ann Hundley Davis—have moved to dismiss Peacock's claims for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). *See* R. 38; R. 40. For the following reasons, Dr. Davis and Dr. Obaisi's motion is denied and Wexford's motion is granted.

**Legal Standard**

A Rule 12(b)(6) motion challenges the sufficiency of the complaint. *See, e.g., Hallinan v. Fraternal Order of Police of Chi. Lodge No. 7*, 570 F.3d 811, 820 (7th

Cir. 2009). A complaint must provide "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), sufficient to provide defendant with "fair notice" of the claim and the basis for it. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). This "standard demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Aschcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While "detailed factual allegations" are not required, "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. The complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw a reasonable inference that the defendant is liable for the misconduct alleged." *Mann*, 707 F.3d at 877 (quoting *Iqbal*, 556 U.S. at 678). In applying this standard, the Court accepts all well-pleaded facts as true and draws all reasonable inferences in favor of the non-moving party. *Mann*, 707 F.3d at 877.

**Background**

Peacock was employed as a landscaper inside Stateville's grounds, and was assigned to mow the grass. R. 35 ¶¶ 17-18. On July 4, 2013, while mowing wet grass on a hill, Peacock's left foot slipped under the mower, and two of his toes were severed. *Id.* ¶¶ 26-29. Peacock was eventually taken to the hospital where he underwent surgery, but the surgeon was unable to reattach Peacock's toes. *Id.* ¶¶ 35-41.

After surgery, the surgeon wrote an order to Stateville's medical staff stating that the dressing of Peacock's wound should be changed three times a day, and providing a regimen of medications. *Id.* ¶ 42. Peacock does not allege what this regimen was.

After he was discharged from the hospital and returned to the Stateville Health Care Unit, Peacock alleges that a Stateville nurse changed his medical order on July 5, 2013 so that his wound dressing was changed only once a day. *Id.* ¶ 45. Peacock also alleges that he was given an inconsistent amount of Motrin and antibiotics contrary to the surgeon's orders, and that on July 9 he was not given any medication at all. *Id.* ¶¶ 44, 46.

Peacock alleges that on July 10, 2013, Dr. Obaisi and Dr. Davis told him that his open wound could be "exposed for an unlimited length of time without risk of damage or danger." *Id.* ¶ 47. Peacock also alleges that the next day Dr. Obaisi told him that during the Civil War, wounds of lost limbs "would be left open and skin would grow back." *Id.* ¶ 49.

On July 16, 2013, Peacock noticed a pungent odor from his wound while his dressing was being changed, but Dr. Obaisi said the odor was normal. *Id.* ¶ 51. Peacock alleges that the nurse who changed his dressing the next day "expressed deep concern about the very strong odor coming from [Peacock's] wound," and ordered a culture to check for infection. *Id.* ¶ 52. On July 20, 2013, Peacock began to experience pain and some numbness in his left toes and leg. *Id.* ¶ 53. On July 23, 2013, Dr. Obaisi informed Peacock that his wound was infected. *Id.* ¶ 54. Peacock

3

alleges that the infection caused him pain and prolonged the recovery period for his toe amputation. *Id.* ¶ 62.

## Analysis

### I. Dr. Davis and Dr. Obaisi

Peacock expressly alleges that Dr. Davis and Dr. Obaisi told him that "his open wound could be exposed for an unlimited length of time without risk of damage or danger," R. 35 ¶ 47, and that they "purposefully fail[ed] to follow the wound care prescribed by the [surgeon]." *Id.* ¶ 62. Dr. Davis and Dr. Obaisi argue that these allegations amount to a mere "difference of opinion between doctors" that cannot "support a claim for deliberate indifference." R. 41 at 4.

That characterization of Peacock's allegations ignores the broader context within which the allegations are made—namely that he eventually suffered an infection. It is true that the "Constitution is not a medical code that mandates specific medical treatment." *Jackson v. Kotter*, 541 F.3d 688, 697 (7th Cir. 2008). And furthermore, "evidence that another doctor would have followed a different course of treatment is insufficient to sustain a deliberate indifference claim.*" Burton v. Downey*, 805 F.3d 776, 786 (7th Cir. 2015). But those principles are derived from the broader rule that, in the prison context, "medical professionals . . . are entitled to deference in treatment decisions *unless* no minimally competent medical professional would have so responded under the circumstances at issue." *McGee v. Adams*, 721 F.3d 474, 481 (7th Cir. 2013) (emphasis added). In other words, "[w]hen a medical professional acts in his professional capacity, he may be held to have

displayed deliberate indifference only if the decision by the professional is such a substantial departure from accepted professional judgment, practice, or standards, as to demonstrate that the person responsible actually did not base the decision on such a judgment." *Id*.

Dr. Davis and Dr. Obaisi contend that these standards demand that the Court defer to their treatment decisions. But the Court is skeptical that "accepted professional practice and standards" provide for a continuum of treatments for a wound like Peacock's, such that there is room for any deference. The Court believes that there must be a definitive number of times a day the dressing for such a wound should be changed and a definitive regimen of antibiotics that is necessary to protect such a wound from infection. And based on the fact that he eventually suffered from an infection, Peacock has plausibly alleged that Dr. Davis's and Dr. Obaisi's treatment constituted a substantial departure from the accepted standard. Absent evidence of how a "minimally competent medical professional" would have treated a wound like Peacock's, the Court cannot say whether the treatment Dr. Davis and Dr. Obaisi provided to him satisfied the constitutional standard. These are questions of fact which cannot be answered at this stage of the proceedings. Peacock's allegations, however, make it plausible that Dr. Obaisi and Dr. Davis failed meet the standard of a "minimally competent medical professional." Thus, Dr. Davis and Dr. Obaisi's motion to dismiss is denied.

## II. Wexford

Peacock also alleges that Wexford "has implemented and maintained a policy and/or practice of: (1) requiring its staff at Stateville to disregard the medical care prescriptions of outside treating physicians if the cost is too expensive; and/or (2) requiring its staff to not provide required medical treatment if the cost is too high." R. 35 ¶ 59. In opposition to Wexford's motion, Peacock attached a Wexford policy document stating that "[c]ost has been and must continue to be a consideration" in deciding treatment. R. 45-1 at 3.[1] This document also states that "cost [is] usually . . . the last variable considered." *Id.* at 2.

Peacock's bald allegation that his allegedly deficient treatment was caused by a Wexford policy "to cut medical costs . . . does not plausibly suggest the existence of such a policy." *Myrick v. Anglin*, 496 Fed. App'x 670, 675 (7th Cir. 2012) (affirming dismissal of *Monell* claims based on an alleged policy "to cut medical costs" because "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice"). Peacock's allegation of a cost-cutting policy is too speculative and untethered to his injury to support his claim. His factual allegations do not plausibly allege how a cost-cutting policy could possibly have caused his infection. Peacock alleges that his infection was caused by a failure to change his bandages frequently enough or give him a sufficient regimen of

---

[1] It is permissible to consider evidence a plaintiff's attaches to his brief in opposition to a motion to dismiss. *See Smith v. Dart*, 803 F.3d 304, 311 (7th Cir. 2015) ("We have held that facts alleged by a plaintiff in a brief in opposition to a motion to dismiss may be considered when evaluating the sufficiency of a complaint so long as they are consistent of the allegations in the complaint.").

6

antibiotics. Peacock fails to allege that the cost of bandages and antibiotics is a significant percentage of Wexford's budget such that a cost-cutting policy would have entailed restricting provision of bandages and antibiotics. Even if Peacock had made such an allegation, the Court finds such an allegation to be speculative and implausible absent additional facts from which the Court could infer that a cost-cutting policy existed that would have impacted the kind of treatment Peacock allegedly received. And contrary to Peacock's argument, the policy document he attached to his brief does not support his allegations.

Courts in this district have dismissed similar claims for similar reasons. *See Sharif v. Ghosh*, 2013 WL 228239, at *6 (N.D. Ill. Jan. 18, 2013) ("Plaintiff's contention of a policy or custom of inadequately treating inmates or refusing to order tests for them based upon financial reasons is at best speculative, as well belied by the records and attachments to his complaint."); *Carter v. Elyea*, 2012 WL 3779064, at *5 (N.D. Ill. Aug. 31, 2012) (the plaintiff alleged a policy of "creation, tolerance, or failure to object to the financial disincentives to transfer detainees to off-site medical facilities when necessary for appropriate and necessary medical care and treatment. But the complaint says very little in support of these purported policies and practices. Instead, the complaint focuses almost exclusively on the events from the first report of [the plaintiff's] pain on August 3, 2010, to his surgery the following day.").

The Court is aware that other courts in this district have denied similar motions to dismiss. But in those cases the plaintiff alleged deprivation of more

7

expensive treatment (such as denying or delaying referrals to specialists outside the prison) or included additional facts that made the plaintiffs' claims plausible. *See Harper v. Wexford Health Sources*, 2016 WL 1056661, at *1 (N.D. Ill. Mar. 17, 2016) ("when [the plaintiff] received a recommended course of treatment from physicians in the gastrointestinal unit at the [UIC] Hospital, Wexford, Obaisi and Stolworthy failed to review the recommendations. When UIC Hospital wanted Harper to return for further treatment, Obaisi failed to facilitate the return trip."); *Shaw v. Obaisi*, 2015 WL 638521, at *4 (N.D. Ill. Feb. 12, 2015) ("Wexford's policies included 'refusing or delaying medical treatment and/or collegial review prescribed by offsite medical professionals such as doctors at UIC; delaying or refusing to provide prescribed pain medication to lower costs.'"); *Watkins v. Ghosh*, 2011 WL 5981006, at *8 (N.D. Ill. Nov. 28, 2011) ("Watkins alleges that Wexford, in an effort to cut costs, has a widespread practice of understaffing Stateville so that prisoners are unable to obtain the treatment that they require. Watkins also alleges that Wexford lacks a procedure for the treatment of degenerative disk disease, loss of disk height, and sacral dysraphism, and that Wexford further lacks medical personnel competent to treat these conditions. Rather than referring patients who suffer from these maladies to outside specialists, Wexford simply denies them treatment in an effort to cut costs."); *Brown v. Ghosh*, 2010 WL 3893939, at *9 (N.D. Ill. Sept. 28, 2010) (the plaintiff alleged that "Wexford Health 'pressured' [his] medical care providers to deny radiation therapy," and "the allegation that Wexford Health pressures medical care providers to deny medical care is specific enough to alert

8

defendants to the policy he alleges infringes on his constitutional right."); *McDonald v. Wexford Health Sources*, 2010 WL 3034529, at \*3 (N.D. Ill. July 30, 2010) ("According to Plaintiff, the cost cutting measures resulted in the firing of a dietician who provided low cholesterol meals; a decreased number of medical technicians in the cell houses at Stateville, which resulted in him having to wait weeks and sometimes months to receive medical care; and leaving Plaintiff without access to a medication to lower his cholesterol that did not also cause him serious pain in his kidneys."). By contrast, the lack of factual allegations plausibly establishing that a cost-cutting policy exists in this case, or that such a policy could have caused Peacock's injury, is fatal to his claim against Wexford based on an express policy.

Lastly, to the extent Peacock alleges that Wexford has a widespread custom or practice of providing deficient medical care due to cost concerns, Peacock's allegations about his own experience are insufficient to make such an allegation plausible. *See Thomas v. Cook Cnty. Sheriff's Dep't*, 604 F.3d 293, 303 (7th Cir. 2010) ("[T]here is no clear consensus as to how frequently [certain] conduct must occur to impose *Monell* liability [under the custom and practice theory], except that it must be more than one instance, or even three.") (internal quotation marks and citations omitted); *Grieveson v. Anderson*, 538 F.3d 763, 774 (7th Cir. 2008) ("[I]t is necessarily more difficult for a plaintiff to demonstrate an official policy or custom based only on his own experience because what is needed is evidence that there is a true municipal policy at issue, not a random event."); *see also Davis v. Metro. Pier &*

*Exposition Auth.*, 2012 WL 2576356, at *12 (N.D. Ill. July 3, 2012); *Lewis v. County of Cook*, 2011 WL 839753, at *14 (N.D. Ill. Feb. 24, 2011); *Travis v. City of Chicago*, 2012 WL 2565826, at *5 (N.D. Ill. June 29, 2012).

**Conclusion**

For the foregoing reasons, Dr. Davis's and Dr. Obaisi's motion, R. 40, is denied, and Wexford's motion, R. 38, is granted. Peacock's claim against Wexford is dismissed without prejudice. Peacock is granted leave to file an amended complaint by May 11, 2016 if he believes he can cure the deficiencies regarding his claim against Wexford the Court has described in this opinion and order. If Peacock does not file an amended complaint by that date, the Court's dismissal of his claim against Wexford will become a dismissal with prejudice.

ENTERED:

_____
Honorable Thomas M. Durkin
United States District Judge

Dated: April 7, 2016

10